# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MOHIT NARAYAN; HANNAH RAHAWI;
and THOMAS HEATH,
　　　　　*Plaintiffs-Appellants,*

　　　　　v.

EGL, INC.; EAGLE FREIGHT
SYSTEMS, INC.; and DOES 1-10,
　　　　　*Defendants-Appellees.*

No. 07-16487

D.C. No.
CV-05-04181-RMW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Ronald M. Whyte, United States District Judge, Presiding

Argued and Submitted
November 4, 2009—San Francisco, California

Filed July 13, 2010
Amended August 5, 2010

Before: Michael Daly Hawkins and Sidney R. Thomas,
Circuit Judges, and Edward R. Korman,* District Judge.

Opinion by Judge Korman

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

11283

## COUNSEL

Stacey Leyton (argued) and Michael Rubin (briefed), Altshuler Berzon, LLP, San Francisco, California, for the plaintiffs-appellants.

Aaron Kaufmann, David Pogrel, Hinton, Alfert & Sumner, Walnut Creek, California, for the plaintiffs-appellants.

R. Ted Cruz (argued), Morgan, Lewis & Bockius, LLP, Houston, Texas, and Y. Anna Suh (briefed), Hunton & Williams LLP, San Francisco, California, for the defendants-appellees.

Robert R. Roginson, Division of Labor Standards Enforcement, Department of Industrial Relations, State of California, San Francisco, California, Amicus Curiae in support of the plaintiffs-appellants.

Matthew Goldberg, The Legal Aid Society — Employment Law Center, San Francisco, California, and Cynthia Rice, California Rural Legal Assistance Foundation, Sacramento, California, Amici Curiae in support of the plaintiffs-appellants.

## ORDER

Appellees' Petition for Panel Rehearing is granted for the limited purpose of amending the Opinion, without further oral argument.

The Opinion filed July 13, 2010, slip op. 10069, is amended as follows:

On page 10084, line 20: <This is not all.> is deleted.

On page 10085, second indented paragraph, first sentence: <The fact that the Drivers here had contracts "expressly acknowledging that they were independent contractors" is simply not significant under California's test of employment.> is replaced with <That the Drivers here had contracts "expressly acknowledging that they were independent contractors" is simply not dispositive under California's test of employment.>.

No subsequent petitions for rehearing and rehearing en banc may be filed.

## OPINION

KORMAN, District Judge:

The California Labor Code ("Labor Code") confers certain benefits on employees that it does not afford independent contractors. Of particular relevance here are the provisions that, *inter alia*, require employers to pay overtime compensation, Cal. Lab. Code §§ 510 & 1194, prohibit employers from making certain improper deductions from wages, Cal. Lab. Code § 221, reimburse employees for necessary business expenses, Cal. Lab. Code § 2802, and provide off-duty meal periods, Cal. Lab. Code §§ 226.7 & 512. These provisions are part of a broad regulatory policy defining the obligations that " 'the law places on an employer without regard to the substance of its contractual obligations to its employee.' " *Nedlloyd Lines B.V. v. Super. Ct.*, 834 P.2d 1148, 1153 (Cal. 1992) (quoting *Foley v. Interactive Data Corp.*, 765 P.2d 373, 394 (Cal. 1988)). As Judge Easterbrook observed in a closely analogous context, statutes enacted to confer special benefits on workers are "designed to defeat rather than implement contractual arrangements." *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1545 (7th Cir. 1987) (Easterbrook, J., concurring).

This appeal from a judgment of the United States District Court for the Northern District of California granting the motion of an employer for summary judgment dismissing claims for benefits under the Labor Code principally presents the issue whether, assuming the existence of an employer-employee relationship in California, the employer may avoid its obligations under the Labor Code by inserting a clause in an employer-drafted pre-printed form contract in which: (1) the employee acknowledges that he is an independent contractor and (2) agrees that the contract would be interpreted in accordance with the laws of another jurisdiction where such an agreement is generally enforceable.

## BACKGROUND

EGL, the employer, is a global transportation, supply chain management and information services company incorporated under the laws of Texas and headquartered in Texas.[1] EGL's services include, *inter alia*, "air and ocean freight forwarding, customs brokerage, [and] local pickup and delivery service." EGL operates through a network of over 400 facilities located in over 100 countries. One of the many aspects of EGL's business is domestic delivery services. Such services may be provided either as part of EGL's freight-forwarding operations or for customers requiring local pick-up and delivery services.

Mohit Narayan, Hanna Rahawi and Thomas Heath (the "Drivers") were residents of California who were engaged to provide freight pick-up and delivery services for EGL in California. All three Drivers signed agreements with EGL for "Leased Equipment and Independent Contractor Services" (the "Agreements"). The Agreements provided that the "intention of the parties is to . . . create a vendor/vendee relationship between Contractor and [EGL]," and acknowledged that "[n]either Contractor nor any of its employees or agents shall be considered to be employees of" EGL. The terms of the Agreements provide, *inter alia*, that the Drivers "shall exercise independent discretion and judgment to determine the method, manner and means of performance of its contractual obligations," although EGL retained the right to "issue reasonable and lawful instructions regarding the results to be accomplished."

Notwithstanding the terms of the Agreements, the Drivers filed a complaint in California against EGL and one of its subsidiaries, Eagle Freight Services (collectively, "EGL"),

---

[1]The complaint was originally filed against EGL and Eagle Freight Services, a subsidiary of EGL. After the district court entered final judgment in this case, EGL was purchased by CEVA Logistics U.S. Holdings, Inc.

alleging that they were EGL employees who were deprived of benefits conferred upon them by the Labor Code. They sought money damages for unpaid overtime wages, business expenses, meal compensation and unlawful deductions from wages as well as other relief, including statutory penalties.

After the case was removed pursuant to 28 U.S.C. § 1332, EGL moved for summary judgment arguing that, under the terms of the Agreements, the Drivers were not employees. Instead they were independent contractors who were not entitled to the benefits conferred upon employees by the Labor Code. Relying on a choice-of-law clause in the Agreements, the district court held that the law of Texas applied, and that declarations in the Agreements that the Drivers were independent contractors rather than employees, compelled the holding that they were independent contractors as a matter of law. Moreover, although California does not regard such declarations as controlling, and applies a multi-factor analysis in which the intent of the parties is one of over a dozen and a half factors, the district court held, without undertaking any analysis of the relevant factors, that the result would be the same under California law. *Narayan v. EGL, Inc.*, No. CV-05-04181-RMW, 2007 WL 2021809, at *9 n.12 (N.D. Cal. July 10, 2007). Consequently, the district court granted EGL's motion for summary judgment.

## DISCUSSION

### I. Choice-of-Law

EGL argues that the choice-of-law clause in the Agreements, which provides that the contracts "shall be interpreted under the laws of the State of Texas," applies to the current dispute. The district court agreed. We review questions regarding choice of law de novo. *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1072 (9th Cir. 2009).

[1] To determine the applicable substantive law, a federal court sitting in diversity applies the choice-of-law rules of the

forum. *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005). California, the forum state, ordinarily examines the scope of a choice-of-law provision in a contract under the law designated in that contract. *Wash. Mut. Bank, FA v. Super. Ct.*, 15 P.3d 1071, 1078 n.3 (Cal. 2001). In this case, that is Texas law.

**[2]** Under Texas law, similarly narrow choice-of-law clauses, providing under what law an agreement "shall be interpreted and enforced," apply only to the interpretation and enforcement of the contract itself; they do not "encompass all disputes between the parties." *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); *accord Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 727 (5th Cir. 2003) (calling similar provision "narrow"). They govern claims that "rise or fall on the interpret[ation] and enforce[ment] of any contractual provision." *Stier*, 992 S.W.2d at 434 (internal quotations omitted) (alterations in original); *see also Busse v. Pac. Cattle Feeding Fund # 1, Ltd.*, 896 S.W.2d 807, 812-13 (Tex. App. 1995) ("The rights, obligations, and cause of action do not arise from the contracts but from the Deceptive Trade Practices Act, the Texas Securities Act, and the common law.").

The Drivers' claims involve entitlement to benefits under the California Labor Code. Whether the Drivers are entitled to those benefits depends on whether they are employees of EGL, which in turn depends on the definition that the otherwise governing law—not the parties—gives to the term "employee." While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract. *See S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 403-07 (Cal. 1989) (listing over one dozen factors "logically pertinent to the inherently difficult determination whether a provider of service is an employee or an excluded independent contractor").

**[3]** *CBS Corp. v. FCC*, 535 F.3d 167 (3d Cir. 2008), *vacated on other grounds*, 129 S. Ct. 2176 (2009), is instructive. There, the Third Circuit held that federal rather than New York law governed the question of whether performers were independent contractors or employees despite the presence of a choice-of-law clause in a contract defining performers as "independent contractors" because the claims arose under a federal regulatory scheme, and "defining the boundaries of permissible vicarious liability under that scheme is . . . a federal matter." *Id.* at 190-92. Similarly here, appellants claims arose under the Labor Code, a California regulatory scheme, and consequently, California law should apply to define the boundaries of liability under that scheme.

## II. Propriety of Summary Judgment Under California Law

Although the district judge applied Texas law to determine that the Drivers were independent contractors as a matter of law, he observed in a conclusory footnote that "[t]he result would be no different if California law governed." *Narayan*, 2007 WL 2021809, at *9 n.12. This conclusion is erroneous. We review a district court's grant of summary judgment *de novo. Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). In doing so, we determine, "viewing the evidence in the light most favorable to the nonmoving party, whether genuine issues of material fact exist and whether the district court correctly applied the relevant substantive law." *Id.* Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a favorable verdict. *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from facts are jury functions, not those of a judge . . . The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A 'justifiable inference' is not necessarily the

most likely inference or the most persuastive inference. Rather, 'an inference as to another material fact may be drawn in favor of the nonmoving party . . . if it is 'rational' or 'reasonable.' " *United Steel Workers of Am. v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989) (internal citation omitted).

**[4]** There are two special circumstances that are relevant to the application of this standard here. First, under California law, once a plaintiff comes forward with evidence that he provided services for an employer, the employee has established a prima facie case that the relationship was one of employer/employee. *Robinson v. George*, 105 P.2d 914, 917 (Cal. 1940). As the Supreme Court of California has held, "[t]he rule . . . is that the fact that one is performing work and labor for another is prima facie evidence of employment and such person is presumed to be a servant in the absence of evidence to the contrary." *Id.* at 916; *see also Cristler v. Express Messenger Sys., Inc.*, 171 Cal. App. 4th 72, 83 (Ct. App. 2009). Once the employee establishes a prima facie case, the burden shifts to the employer, which may prove, if it can, that the presumed employee was an independent contractor. *Cristler*, 171 Cal. App. 4th at 84 (approving a jury instruction that "[t]he Defendant has the obligation to prove that the Plaintiffs were independent contractors"); *Bemis v. People*, 240 P.2d 638, 644 (Cal. Ct. App. 1952) ("It is also the law that, generally speaking, the burden of proof is on the party attacking the employment relationship.").

**[5]** The Drivers here have established a prima facie case. This means that, in order to prevail on its motion for summary judgment, drawing all justifiable inferences from the uncontroverted evidence, EGL would have to establish that a jury would be compelled to find that it had established by a preponderance of the evidence that the Drivers were independent contractors. This hurdle is particularly difficult for EGL to overcome in light of the second special consideration in this

case, namely, the multi-faceted test that applies in resolving the issue whether the Drivers are employees.

**[6]** The Supreme Court of California has enumerated a number of indicia of an employment relationship, the most important of which is the "right to discharge at will, without cause." *Borello,* 769 P.2d at 404 (quoting *Tieberg v. Unemployment Ins. App. Bd.*, 471 P.2d 975, 979 (Cal. 1970)). *Borello* endorsed other factors derived from the Restatement (Second) of Agency that may point to an employment relationship:

> (a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.

*Id*. at 404. *Borello* also approvingly cited five factors adopted by cases in other jurisdictions. These include:

> (1) the alleged employee's opportunity for profit or loss depending on his managerial skill; (2) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; (3) whether the service rendered requires a special skill; (4) the degree of permanence of the working relationship; and (5) whether the service

rendered is an integral part of the alleged employer's business.

*Id.* at 407. Moreover, it characterized as "helpful" the standards set forth in Labor Code Section 2750.50, *id.*, which provide "extensive guidelines for determining whether one who operates under a required contractor's license is an independent contractor or employee." *Id.* at 404 n.5.

All factors were held to be "logically pertinent to the inherently difficult determination whether a provider of service is an employee or an excluded independent contractor." *Id.* at 407. Nevertheless, "the individual factors cannot be applied mechanically as separate tests; they are intertwined and their weight depends on particular combinations." *Id.* at 404 (internal citation and quotations omitted). "We must assess and weigh all of the incidents of the relationship with the understanding that no one factor is decisive, and that it is the rare case where the various factors will point with unanimity in one direction or the other." *NLRB v. Friendly Cab Co.*, 512 F.3d 1090, 1097 (9th Cir. 2007) (internal citation and quotations omitted).

**[7]** Judge Easterbrook has keenly observed in a case under the Fair Labor Standards Act that:

> [i]f we are to have multiple factors, we should also have a trial. A fact-bound approach calling for the balancing of incommensurables, an approach in which no ascertainable legal rule determines a unique outcome, is one in which the trier of fact plays the principal part. That there is a legal overlay to the factual question does not affect the role of the trier of fact.

*Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1542 (7th Cir. 1987) (Easterbook, J., concurring) (internal citations omitted). Under these circumstances, "we cannot readily say . . . that

the 'ultimate conclusion as to whether the workers are employees or independent contractors' is one of law. The drawing of inferences from subordinate to 'ultimate' facts is a task for the trier of fact—if, under the governing legal rule, the inferences are subject to legitimate dispute." *Id.* at 1543.

**[8]** The inferences here are subject to legitimate dispute. The delivery services provided by the EGL drivers were an essential part of the regular business of EGL. Indeed, EGL's instructional video shown to the drivers advises them that "as an [EGL] pickup and delivery driver, you have the key role in the shipping process . . . The [EGL pickup and delivery] driver is the eyes of a dispatcher. You can identify shipments that are potential claims before they are put into our system and you ensure our customers' freight is protected by using proper loading work method techniques." More than that, "[y]ou are a vital source for shipping leads and competitor information at the actual shipping points, and you are a source of traffic and road condition information for dispatch and other [EGL] drivers to be able to avoid unnecessary delays on critical shipments." The video goes on to describe the drivers as "our company's largest sales force," because "[t]hrough your interactions with the customer, you communicate [EGL's] commitment to excellence." Indeed, the video acknowledges that "for our company to continue to grow, every [EGL] driver must understand the critical importance of the job they do."

Consequently, EGL's Safety and Compliance Manual and Drivers' Handbook instructed the EGL drivers on, *inter alia*, how to conduct themselves when receiving assignments and packages, responding to customer complaints and handling damaged freight. The drivers used EGL-supplied forms, received company memoranda and attended meetings on company policies. The Handbook also provided guidelines on how to communicate with EGL's dispatch, instructing drivers to notify the dispatcher before leaving EGL's facility dock, to contact the dispatcher after each delivery stop to report that

the delivery was completed, and to immediately report any traffic delays. Indeed, the EGL drivers were told that "[c]ommunicating with dispatch is the single most important aspect of the services drivers are paid for. It is not enough to get the freight picked up or delivered. To be competitive in today's market, the team must be able to identify at a moment's notice exactly where a shipment is in the course of transit." The EGL drivers were also instructed "never [to] wait at a stop without notifying the dispatcher first" and "allow[ing the] dispatcher to make the service decisions." Similarly, EGL's drivers were told that, if they cannot find a pickup or delivery site, "Don't ride around for 15 or 30 minutes, radio in and ask for help!"

Moreover, there was evidence that EGL's drivers were ordered to report to the EGL station at a set time each morning—whether or not packages were available to be delivered. Indeed, one of EGL's dispatchers testified that one of the plaintiff Drivers was subject to disciplinary action for showing up late. Similarly, the record indicates that the drivers had to submit advance notice of vacation days. The plaintiff Drivers also submitted evidence that, although their contracts purportedly gave them the right to pick and choose assignments, in practice, EGL presented them with batches of deliveries that they generally had to accept as an all-or-nothing proposition. In some circumstances, standard operating procedure agreements between EGL and many of its customers determined the manner in which drivers made deliveries. Moreover, the plaintiff Drivers drove exclusively for EGL during their period of employment, and there is at least a material issue of fact as to whether they could have driven for other delivery companies because EGL required them to affix EGL logos to their trucks, which the plaintiff Drivers allege could not practically be covered up.

[9] The record also shows that EGL controlled many other details of their drivers' performance. EGL regulated their drivers' appearance—requiring them to wear EGL-branded

shirts, safety boots and an EGL identification card. Although their drivers owned their own trucks or vans as noted above, EGL required that they affix EGL logos to the outside of their vehicles. This requirement was "established due to government regulations, customer requests, and for security purposes." EGL imposed requirements on their drivers' vehicles —in particular, that they be painted white and less than five years old, although EGL disputes whether these requirements were enforced. This requirement was imposed to meet "the industry standard, the DOT regulation, and . . . customer's requirements."

EGL's drivers supplied some of the equipment used to deliver packages (*e.g.*, hand trucks, lift gates, etc.), but EGL provided other supplies such as EGL-branded boxes and packing tape to their drivers for package pick-ups. While EGL's drivers retained the right to employ others to assist in performing their contractual obligations, EGL required all helpers to be approved by it. The same rule applied to passengers. This requirement was imposed "to safeguard EGL employees, contractors, . . . customers, and the general public from unsafe and unlawful actions" by a helper or passenger. Nonetheless, none of the plaintiff Drivers hired helpers to perform their duties for EGL.

**[10]** Significantly, the contracts signed by the plaintiff Drivers contained automatic renewal clauses and could be terminated by either party upon thirty-days notice or upon breach of the agreement. Such an agreement is a substantial indicator of an at-will employment relationship. *See Estrada v. FedEx Ground Package Sys., Inc.*, 154 Cal. App. 4th 1, 6, 11 (Ct. App. 2007) (agreement providing for termination with thirty-day notice is evidence of at-will employment); *Gonzalez v. Workers' Comp. App. Bd.*, 46 Cal. App. 4th 1584, 1593 (Ct. App. 1996) (contract with two-week notice termination provision constituted at-will employment where contract provided no consequences for employers' failure to give notice); *Antelope Valley Press v. Poizner*, 162 Cal. App. 4th 839, 854

(Ct. App. 2008) (termination with thirty-day notice require-
ment "clearly" gives employer the right to discharge at-will
without cause). *But see State Comp. Ins. Fund v. Brown*, 32
Cal. App. 4th 188, 203 (Ct. App. 1995) (termination provision
with fourteen-day notice requirement was "consistent either
with an employment-at-will relationship or parties in a contin-
uing contractual relationship").

Moreover, the occupation that the plaintiff Drivers were
engaged in did not require a high level of skill. Drivers were
not required to possess any special license beyond a normal
driver's license, and no skills beyond the ability to drive.
*Estrada*, 154 Cal. App. 4th at 12; *JKH Enters., Inc. v. Dep't
of Indus. Relations*, 142 Cal. App. 4th 1046, 1064 (Ct. App.
2006) (courier service drivers did not require a high level of
skill); *cf. Brown*, 32 Cal. App. 4th at 202-03 (commercial
truck drivers require "abilities beyond those possessed by a
general laborer (or, indeed, possessors of ordinary driver's
licenses)"); *Gonzalez*, 46 Cal. App. 4th at 1592 (distinguish-
ing between truckers in *Brown*, who require a special driver's
license and must learn special driving skills, from individuals
who deliver newspapers in cars).

**[11]** Finally, the length and indefinite nature of the plain-
tiff Drivers' tenure with EGL also point toward an employ-
ment relationship. Here, the plaintiff Drivers worked at EGL
for several years, and their Agreements were automatically
renewed. This was not a circumstance where a contractor was
hired to perform a specific task for a defined period of time.
There was no contemplated end to the service relationship at
the time that the plaintiff Drivers began working for EGL.

The district court, as we have previously observed, did not
apply the relevant factors identified by the Supreme Court of
California to the facts in this case. The only reference to fac-
tors that were arguably relevant were addressed in the context
of distinguishing a California case that found an employee-
employer relationship in closely analogous circumstances. *See*

*Air Couriers Int'l v. Employ. Dev. Dep't*, 150 Cal. App. 4th 923 (Ct. App. 2007). Thus, the district judge observed that "in *Air Couriers*, the drivers did not have written contracts, as here, expressly acknowledging that they were independent contractors. Further, in *Air Couriers*, the drivers drove regular routes, worked regular schedules, and were paid on regularly scheduled paydays." *Narayan*, 2007 WL 2021809, at *9 n.12. By contrast, he found that the instant case was distinguishable because "the drivers were not required to work regular schedules, were paid on a per job basis, and determined their own routes." *Id.* These distinctions are neither dispositive nor the subject of factual disputes suitable for resolution by summary judgment.

**[12]** That the Drivers here had contracts "expressly acknowledging that they were independent contractors" is simply not dispositive under California's test of employment. *Borello,* 769 P.2d at 403 ("The label placed by the parties on their relationship is not dispositive, and subterfuges are not countenanced.") Moreover, there is an issue of fact over whether the plaintiff Drivers were required to work regular schedules. Contrary to the district judge's suggestion, they were paid on a regular basis, although their salary was based on a percentage of each delivery. Nevertheless, the fact that their salary was determined in this way is equally consistent with an employee relationship, particularly where other indicia of employment are present. *Ali v. L.A. Focus Publ'n*, 112 Cal. App. 4th 1477, 1485 (Ct. App. 2003) (that reporter was paid by the article is indicative of an independent contractor relationship, but that fact alone is not dispositive if other indicia of employment are present); *Toyota Motor Sales U.S.A., Inc. v. Super. Ct.*, 220 Cal. App. 3d 864, 877 (Ct. App. 1990) (the fact that worker was paid on a commission basis is consistent with employee status).

Similarly, setting aside evidence that the plaintiff Drivers did not, as a practical matter, determine their own routes, the ability to determine a driving route is "simply a freedom

inherent in the nature of the work and not determinitive of the employment relation." *Toyota*, 220 Cal. App. 3d at 876; *see also Home Interior & Gifts, Inc. v. Veliz*, 695 S.W.2d 35, 40-41 (Tex. App. 1985) (finding employee-employer relationship although drivers generally determined how to get to their destinations). These cases simply reflect the common-sense rule that, "[i]f an employment relationship exists, the fact that a certain amount of freedom is allowed or is inherent in the nature of the work involved does not change the character of the relationship, particularly where the employer has general supervision and control." *Air Couriers*, 150 Cal. App. 4th at 934 (quoting *Grant v. Woods*, 71 Cal. App. 3d 647, 653 (Ct. App. 1977)).

**[13]** Ultimately, under California's multi-faceted test of employment, there existed at the very least sufficient indicia of an employment relationship between the plaintiff Drivers and EGL such that a reasonable jury could find the existence of such a relationship. Indeed, although it plays no role in our decision to deny summary judgment, it is not without significance that, applying comparable factors to those that we apply here, the Internal Revenue Service (at EGL's request) and the Employment Development Department of California (at Narayan's request) have determined that Narayan was an employee for federal tax purposes (applying federal law) and California Unemployment or Disability Insurance (applying California law), respectively.

## CONCLUSION

The judgment of the district court granting EGL's motion for summary judgment is REVERSED and REMANDED.