**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ROOSEVELT KAIRY; LARRY BROWN;
WAYNE DICKSON; DRAKE OSMUN;
HARJINDER SINGHDIETZ,
          *Plaintiffs-Appellants,*

          v.

SUPERSHUTTLE INTERNATIONAL;
SUPERSHUTTLE FRANCHISE
CORPORATION; DOES 1 THROUGH 20,
INCLUSIVE,
          *Defendants-Appellees.*

No. 10-16150

DC No.
CV 08-2993 JSW

OPINION

Appeal from the United States District Court
for the Northern District of California
Jeffrey S. White, District Judge, Presiding

Argued and Submitted
October 14, 2011—San Francisco, California

Filed November 3, 2011

Before: Betty B. Fletcher, Stephen Reinhardt, and
A. Wallace Tashima, Circuit Judges.

Opinion by Judge Tashima

19857

**COUNSEL**

Michael Rubin, Altshuler Berzon LLP, San Francisco, California, for the plaintiffs-appellants.

Steven C. Rice, Marron Lawyers, Long Beach, California, for the defendants-appellees.

Patrick S. Berdge, San Francisco, California, for the Public Utilities Commission of the State of California, as *amicus curiae*.

**OPINION**

TASHIMA, Circuit Judge:

This case requires us to decide whether a federal district court lacks subject matter jurisdiction to determine whether passenger stage corporation drivers are employees or independent contractors under California law. Specifically, we must consider whether such a decision by the district court would hinder, frustrate, interfere with, or obstruct the regulatory authority exercised by the California Public Utilities Commission over passenger stage corporations, as prohibited by California Public Utilities Code § 1759. We hold that it would not.

## I.  Background

**[1]** The Public Utilities Commission ("PUC" or "commission") is a state administrative agency created by the California Constitution to regulate public utilities. Cal. Const. art. XII. The California Public Utilities Code protects the jurisdiction of the PUC by limiting judicial review of commission decisions and policies:

No court of this state, except the Supreme Court and the court of appeal . . . shall have jurisdiction to review, reverse, correct, or annul any order or decision of the commission or to suspend or delay the execution or operation thereof, or to enjoin, restrain, or interfere with the commission in the performance of its official duties . . . .

Cal. Pub. Util. Code § 1759(a).

Other provisions of the Public Utilities Code, however, make clear that public utilities are also subject to California law generally. Chapter 11 of the Public Utilities Act (§§ 2100-2119), entitled "Violations," lays out a variety of remedies available if a public utility violates the law. A number of public enforcement remedies are enumerated, but the sole private remedy in Chapter 11 is found in § 2106:

Any public utility which does, causes to be done, or permits any act, matter, or thing prohibited or declared unlawful, or which omits to do any act, matter, or thing required to be done, either by the Constitution, any law of this State, or any order or decision of the commission, shall be liable to the persons or corporations affected thereby for all loss, damages, or injury caused thereby or resulting therefrom . . . . An action to recover for such loss, damage, or injury may be brought in any court of competent jurisdiction by any corporation or person.

Cal. Pub. Util. Code § 2106. The issue we must address is the tension between this statutory remedies provision and the jurisdictional limitation set out in § 1759.

The Public Utilities Code also specifically grants the PUC the power to regulate common carriers, including passenger stage corporations ("PSCs"), which include "every corporation or person engaged as a common carrier, for compensa-

tion, in the ownership, control, operation or management of any passenger stage over any public highway in this state between fixed termini or over a regular route." Cal. Pub. Util. Code §§ 211(c), 216(a), 226(a). In General Order 158-A, the PUC promulgated rules governing the operations of PSCs. Section 5.03 of that order provides:

> DRIVER STATUS. Every driver of a vehicle shall be the certificate holder or under the complete supervision, direction and control of the operating carrier and shall be:
>
> A. An employee of the certificate holder; or,
>
> B. An employee of a sub-carrier; or,
>
> C. An independent owner-operator who holds charter-party carrier authority and is operating as a sub-carrier.

Other provisions regulate the vehicles used by PSCs, inspection and records requirements, tariffs and timetables, and drug and alcohol testing of drivers. General Order 158-A §§ 4.01-10.06.

Defendant-Appellee SuperShuttle International, Inc., provides shared-ride airport shuttle service. In California, Super-Shuttle licenses its operations to subsidiary City Licensees which hold PUC-issued PSC certificates; thus, SuperShuttle is considered a PSC subject to PUC regulation. Prior to 2001, SuperShuttle classified its California drivers as "employees." SuperShuttle then decided to shift to a "unit franchise model," in which the SuperShuttle City Licensees hire drivers as independent contractor "franchisees," pursuant to a Unit Franchise Agreement, or allow their franchisees to hire additional drivers.

Plaintiffs-Appellants are current or former "franchisee" shuttle van drivers for SuperShuttle in various parts of California. The plaintiff-drivers filed a putative class action in Alameda County Superior Court, alleging that Plaintiffs were misclassified as "independent contractors," when, in truth, they were "employees" under California law. Plaintiffs alleged that they had consequently been deprived of the full protections provided to employees under the California Labor Code, including overtime and minimum wages, reimbursement of business expenses and deductions wrongfully taken from wages, and meal period pay. In support of their allegations, Plaintiffs asserted that SuperShuttle treats its drivers like employees in many respects, such as requiring drivers to work within designated geographical areas, charge set fares, and obey detailed standards regarding their appearance and behavior while working. Defendants removed the action to federal court pursuant to the Class Action Fairness Act. 28 U.S.C. §§ 1332(d), 1453.[1]

The district court granted SuperShuttle's motion to dismiss Plaintiffs' state law claims holding that it lacked subject matter jurisdiction. *Kairy v. SuperShuttle Int'l, Inc.*, 721 F. Supp. 2d 884, 889-90 (N.D. Cal. 2009). The court applied the three-part test laid out by the California Supreme Court in *San Diego Gas & Electric Co. v. Superior Court (Covalt)*, 920 P.2d 669, 687-95 (Cal. 1996), designed to resolve conflicts between actions brought against a public utility under Public Utilities Code § 2106 and the jurisdiction-stripping provision in § 1759. The district court first decided that the PUC had the authority to formulate policy regarding the classification of PSC drivers. *Kairy*, 721 F. Supp. 2d at 888. It then concluded that the PUC had actually exercised that authority by promulgating General Order 158-A and through its decision interpreting that order, *In re Prime Time Shuttle Int'l, Inc.*, 67

---

[1]After removal, Plaintiffs amended their complaint to add a claim for unpaid minimum wages and overtime under the federal Fair Labor Standards Act.

CPUC 2d 437, 1996 WL 465519 (Cal. PUC, Aug. 2, 1996) ("*Prime Time*"). *Kairy*, 721 F. Supp. 2d at 888-89. Finally, the district court concluded that to allow Plaintiffs' action to go forward would interfere with the PUC's exercise of its regulatory authority over the classification of PSC drivers. *Id.* at 889. Based on this three-part analysis, the district court held that it lacked subject matter jurisdiction pursuant to § 1759; consequently, it dismissed Plaintiffs' state law claims. *Id.* at 889-90.

## II.   Jurisdiction and Standard of Review

The district court certified its dismissal order and this Court granted Plaintiffs' petition for interlocutory review. We therefore have jurisdiction pursuant to 28 U.S.C. § 1292(b). The issue of whether the district court properly dismissed Plaintiffs' state law claims for lack of subject matter jurisdiction is a question of law and is reviewed *de novo*. *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 968 (9th Cir. 1999).

## III.   Discussion

In a case requiring a federal court to apply California law, the court "must apply the law as it believes the California Supreme Court would apply it." *Gravquick A/S v. Trimble Navigation Int'l, Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003). "In the absence of a controlling California Supreme Court decision, the panel must predict how the California Supreme Court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids." *Id.*

The California Supreme Court has on a number of occasions addressed the tension between Public Utilities Code § 1759 and the public and private remedies provided for in Chapter 11 of that Code, and has consistently applied a three-part test to resolve any conflict. *See, e.g., Covalt*, 920 P.2d at

678-79 (involving claims for damages and injunctive relief against an electric utility based on nuisance and personal injury causes of action); *Hartwell Corp. v. Superior Court*, 38 P.3d 1098, 1102-03 (Cal. 2002) (concerning claims for damages and injunctive relief brought against water utilities); *People ex rel. Orloff v. Pac. Bell*, 80 P.3d 201, 210-12 (Cal. 2003) (considering claims against communications utilities by county district attorneys for violations of the California Business and Professions Code).

The California Supreme Court first laid out the applicable test in *Covalt*, noting in particular "the primacy of section 1759" and that the relief provided for in § 2106 correspondingly must "be construed as *limited* to those situations in which an award of damages would not hinder or frustrate the commission's declared supervisory and regulatory policies." *Covalt*, 920 P.2d at 683 (quoting *Waters v. Pac. Tel. Co.*, 523 P.2d 1161 (Cal. 1974)). To determine whether an action was barred by § 1759, the court asked: (1) whether the PUC had the authority to adopt a regulatory policy on the subject matter of the litigation; (2) whether the PUC had exercised that authority; and (3) whether action in the case before the court would hinder or interfere with the PUC's exercise of regulatory authority. *Id.* at 687-95; *see also Hartwell*, 38 P.3d at 1106.

**[2]** Plaintiffs allege that SuperShuttle violated the California Labor Code and that their suit falls within the broad language of Public Utilities Code § 2106, which permits private suits against public utilities for violations of "any law of this State." Accordingly, we must apply the *Covalt* test to resolve the potential conflict between the PUC's statutory jurisdiction over PSCs, protected from judicial interference by § 1759, and the instant suit between a PSC and its drivers. We conclude that under the *Covalt* test Plaintiffs are not precluded from pursuing their suit in the district court because a decision by that court would not hinder or interfere with the PUC's

exercise of regulatory authority over the PSC-driver relation-
ship.

## A.   PUC Authority to Regulate

**[3]** The first step in the *Covalt* inquiry requires us to decide
if the PUC has the authority to adopt a regulatory policy on
the subject matter of this litigation, the relationship between
PSCs and their drivers. We conclude that it does. The discus-
sion of the PUC's powers in *Covalt* is instructive; the Califor-
nia Supreme Court explained there that the commission has
far-reaching duties, functions, and powers, and that the Cali-
fornia Constitution confers broad authority on the commission
to regulate utilities. *Covalt*, 920 P.2d at 681. The Public Utili-
ties Code authorizes the PUC to " 'do all things . . . which are
necessary and convenient' in the exercise of its jurisdiction."
*Id.* Moreover, the PUC is permitted to require every utility to
do "any other act which the health or safety of its employees,
passengers, customers, or the public may demand." Cal. Pub.
Util. Code § 768. The PUC's broad powers to protect public
health and safety apply with full force in the context of its
regulation of PSCs. Those powers give the commission
authority to regulate the types of drivers, whether employees
or independent contractors, that an airport shuttle service is
permitted to use, because the closeness of the relationship
between a company and its drivers could potentially implicate
public safety.

**[4]** Moreover, the PUC itself has asserted that it has the
authority to determine what type of relationship a PSC may
maintain with its drivers, stating in an administrative decision,
"If we find a failure to provide good service, . . . that finding
*might* lead us to consider adopting rules to restrict PSC reli-
ance on nonemployee drivers, if such reliance is demonstrated
to be the main source of Prime Time's service problems."
*Prime Time*, 1996 WL 465519, at *13 (emphasis added); *see
also* PUC *Amicus* Br. at 4 ("The Commission contends it
*could* prohibit independent-contractors from operating shuttle

vans on grounds of service or safety to the public . . . ." (emphasis added)). Such warnings suggest that the PUC considers it well within its jurisdiction to limit the classes of drivers available to PSCs if safety concerns so demand. Therefore, both the general regulatory powers granted to the PUC and the PUC's own interpretation of its jurisdictional authority in a decision concerning PSCs indicate that the district court was correct in concluding that the PUC has the authority to regulate the type of relationship between airport shuttle services and their drivers.

## B.   PUC Exercise of Its Authority to Regulate

**[5]** The second part of the *Covalt* inquiry requires this Court to ask whether the PUC has exercised its authority to regulate the PSC-driver relationship. The district court below concluded that the PUC had actually exercised such authority, relying on General Order 158-A and the PUC's decision in *Prime Time*. *Kairy*, 721 F. Supp. 2d at 888. As noted above, General Order 158-A § 5.03 permits PSCs to use either employee drivers or independent contractor drivers, as long as the PSC maintains "complete supervision, direction and control" over those drivers. In *Prime Time*, the PUC reiterated that it had no institutional preference for employee or non-employee drivers and that the "complete supervision" requirement in § 5.03 could be compatible with an independent contractor relationship. *Prime Time*, 1996 WL 465519, at *21, *47-*48.

In response, Plaintiffs argue that General Order 158-A and *Prime Time* do not represent an actual exercise of PUC authority over the specific question of driver classification, because they do not require a PSC to use any particular sort of driver and so do not alter what would be the default rule absent any PUC action. They emphasize that both General Order 158-A § 5.03 and *Prime Time* express agnosticism towards whether a PSC chooses to use employees or independent contractors, leaving the choice to each PSC. *See Prime*

*Time*, 1996 WL 465519, at *16 ("We do not regulate . . . a PSC's preference for employee or nonemployee drivers . . . ."). As a result, Plaintiffs argue, the PUC has declined to exercise its power to control or limit the types of drivers a PSC can use.

SuperShuttle relies on a California Court of Appeal decision addressing a related question. In *Sarale v. Pacific Gas & Electric Co.*, 117 Cal. Rptr. 3d 24 (Ct. App. 2010), the Court of Appeal considered a claim by private individuals against Pacific Gas & Electric Company ("PG&E") based on an increase in the amount that the company was trimming off walnut trees owned by the plaintiffs near power lines. *Id.* at 27-29. The plaintiffs sought, among other relief, a declaration that PG&E was not authorized to trim further than the minimum trim distance specified in a PUC general order. *Id.* at 29. The plaintiffs argued that the second part of the *Covalt* test was not satisfied because the PUC had specifically declined to exercise its authority to regulate *excessive* trimming, the subject matter of the litigation, and had merely regulated minimum trimming requirements. *Id.* at 34. The court rejected this argument, stating:

> For purposes of applying the *Covalt* test, it does not matter whether we characterize the commission's actions broadly, as addressing "the management of vegetation near power lines," or narrowly, as addressing "minimum [tree] trimming clearances." What matters is that the commission has exercised its authority to adopt a regulatory policy relating to tree trimming around power lines—regardless of how that policy may be characterized.

*Id.* (alteration in original). SuperShuttle contends that under *Sarale,* the second *Covalt* inquiry would be satisfied here if the PUC adopted a policy merely *related* to the relationship between PSCs and their drivers, even if it did not specifically limit the types of drivers that could be used or how those driv-

ers should be classified; accordingly, that the PUC has acted to regulate the requisite degree of supervision that must exist in the PSC-driver relationship.

[6] Plaintiffs dispute this analogy, arguing that a policy merely relating to the PSC-driver relationship is far too broad to constitute an exercise of authority over determinations whether particular drivers are employees or independent contractors. More important, the PUC itself asserts in its *amicus* brief that it "has not exercised authority over the . . . employment classification of shuttle van drivers." PUC *Amicus* Br. at 6. The PUC was well aware of the decision in *Sarale*, and had, in fact, actively asserted during that litigation its position that the commission had exercised authority over the matter at issue. Nonetheless, the PUC has maintained in this case that the district court's determination that the PUC had exercised its authority over the subject-matter underlying Plaintiffs' claim was based on a misreading of the *Prime Time* decision and was contrary to fact. We recognize that a resolution of this issue presents a close question. Because we conclude that Plaintiffs' claim would not frustrate or hinder any existing policy of the PUC and, thus, can proceed under part three of *Covalt*, it is unnecessary for us to decide the question whether General Order 158-A represents an exercise of PUC authority over the instant matter.

## C.   Hindrance to PUC Policy

[7] The final prong of the *Covalt* test is whether judicial action would hinder or interfere with the PUC's exercise of regulatory authority over the PSC-driver relationship. Under normal circumstances, a district court would determine whether the SuperShuttle drivers were *de facto* employees pursuant to California law by applying a multi-factor test. *See Borello & Sons, Inc. v. Dep't of Indus. Relations*, 769 P.2d 399, 404 (Cal. 1989) (explaining that while the principal test of an employment relationship is the right to control the manner and means of accomplishing the result desired, the "con-

trol" test cannot be applied in isolation); *Narayan v. EGL, Inc.,* 616 F.3d 895, 900-01 (9th Cir. 2010) (detailing the many factors the California Supreme Court has enumerated that indicate an employment relationship, which must all be assessed and weighed together). The central question of the final *Covalt* inquiry, then, is whether application of the multi-factor California *de facto* employee test to Plaintiffs in this case would hinder, frustrate, or interfere with the PUC's requirement in General Order 158-A § 5.03 that drivers, regardless of their employment status, be under the "complete supervision, direction and control" of the PSC.

Defendants and Plaintiffs take very different views of the meaning of the supervision requirement in § 5.03. Defendants argue that "complete supervision, direction and control" demands total control over PSC drivers and is in all important respects synonymous with the method under California law of determining which workers are *de facto* employees. Thus, Defendants argue, the PUC permits and, in fact, requires a PSC to treat independent contractor drivers just as if they were employees. Adopting Defendants' definition would require us to conclude that the PUC redefined the term "independent contractor" with respect to PSC drivers, such that a PSC could treat a worker exactly like a *de facto* employee as defined by California law, and yet choose to *call* them an independent contractor and thereby deprive them of the protections of California employment law.

**[8]** Plaintiffs take a different approach to the meaning of § 5.03. They contend that the "complete supervision" language in § 5.03 was not meant to change the definition of "independent contractor." In their view, it simply means that PSCs must have complete supervision, direction, and control over *safety- and service-related issues*, but is not synonymous with the California test for employee status, which Plaintiffs point out goes beyond looking at mere "control" over the employee. They suggest that SuperShuttle's regulation of the minute details of drivers' behavior and appearance, down to

sock color and a requirement that drivers be "neatly shaven," goes beyond the "complete supervision" required by § 5.03 and instead makes the drivers *de facto* employees under California law.

We conclude that Plaintiffs have the better argument and adopt their interpretation of § 5.03 as the more reasonable reading of the regulation.[2] We also find the PUC's own statements regarding its jurisdictional interests to be very persuasive. In an *amicus* brief filed with this Court, the PUC insists that § 5.03 does not alter preexisting employment law definitions:

> The Commission has held, and continues to hold, that both the courts and appropriate governmental agencies, such as California's Department of Industrial Relations ("DIR") have the necessary jurisdiction to determine employment status such as employee or independent contractor . . . . [T]he Commission, however, does not look at various factors for determining employee status of a Commission-licensed shuttle van carrier's drivers, unless there is a specific jurisdictional reason to do so.

PUC *Amicus* Br. at 2. Accordingly, the PUC maintains that it will continue to defer to employment status decisions made by the traditional decision-makers in this area.

---

[2]Under California rules of statutory interpretation, the words of a statute must be read in context, considering the nature and purpose of the statutory enactment. *Phelps v. Stostad*, 939 P.2d 760, 765 (Cal. 1997). The court must give the provision a reasonable, commonsense interpretation that is consistent with the intention of the lawmakers and that "will result in wise policy rather than mischief or absurdity." *In re McSherry*, 5 Cal. Rptr. 3d 497, 501 (Ct. App. 2003). Generally, the same rules of interpretation which apply to statutes govern the construction and interpretation of administrative agency regulations. *Hoffman v. Smithwoods RV Park,* 102 Cal. Rptr. 3d 72, 78 (Ct. App. 2009).

**[9]** California courts have made reference to the PUC's *amicus* briefs filed in § 1759 cases for aid in assessing the third question in the *Covalt* analysis. *See Orloff*, 80 P.3d at 214 ("Indeed, the PUC itself, in an amicus curiae brief . . . agrees that nothing in the present action undermines or hinders any ongoing policy, program, or other aspect of its authority."); *Koponen v. Pac. Gas & Elec. Co.*, 81 Cal. Rptr. 3d 22, 30 (Ct. App. 2008) ("Our conclusion on this point is supported by the commission itself, which filed an amicus curiae brief at our request."). Moreover, in *Orloff*, the California Supreme Court suggested that, in future cases, a court considering whether a civil action was barred by § 1759 "may deem it appropriate to solicit the views of the PUC regarding whether the action is likely to interfere with the PUC's performance of its duties." *Orloff*, 80 P.3d at 215 n.12. The California courts' reliance on the PUC's view of the third *Covalt* inquiry means that, in this case, the PUC's assertion that it did not mean to alter or even involve itself in employment status determinations should be given persuasive effect in deciding what § 5.03 requires.

Further, the *Prime Time* decision does not support the idea that the PUC was attempting to alter the general California common law definition of "independent contractor" when it promulgated § 5.03. In that decision, the PUC stated:

> We do not regulate . . . a PSC's preference for employee or nonemployee drivers . . . . Prime Time may have committed improprieties, under laws that we do not administer . . . but if such is the case, relief lies elsewhere. If and when Prime Time is found to have committed such improprieties, we may reconsider Prime Time's fitness to continue to hold a PSC certificate, but such reconsideration would come only after a court or agency with jurisdiction over the underlying subject matter has taken action.

*Prime Time*, 1996 WL 465519, at *16. The PUC thus made clear that it does not wish to exercise jurisdiction over dis-

putes involving employment status. The PUC's repeated insistence, both in *Prime Time* and its amicus briefing, that it will not exercise jurisdiction over employment status issues means that, if we adopted Defendants' argument that the district court lacks subject matter jurisdiction in this case, Plaintiffs would have no forum at all for their employment status claims. This provides yet more support for the conclusion that the "complete supervision" requirement was not meant to require employee-like control over independent contractor drivers.

In addition, basic rules of statutory interpretation support a reading of § 5.03 that incorporates the general common law definition of "independent contractor" rather than creating a new category of independent contractors in the context of PSC drivers. Nowhere in General Order 158-A are the terms "employee" or "independent owner-driver" defined. Under the California Civil Code, words and phrases that "have acquired a peculiar and appropriate meaning in law . . . are to be construed according to such peculiar and appropriate meaning." Cal. Civ. Code § 13; *see also People v. Lopez*, 79 P.3d 548, 553 (Cal. 2003) ("[I]f a term known to the common law has not otherwise been defined by statute, it is assumed that the common law meaning was intended."). In the absence of any indication that § 5.03 was meant to alter the meaning of "independent owner-driver" or "employee," they should be read in light of the common law definitions of those terms as described in *Borello* and *Narayan*.

In sum, *Prime Time*, the PUC's *amicus* brief, and the plain language of § 5.03 all support a reading of § 5.03 in which "employee" and "independent owner-driver" retain their meaning under California employment law. In addition, Plaintiffs' argument that the "complete supervision, direction and control" requirement in § 5.03 is limited to safety- and service-related issues also finds support in PUC decisions. The rulemaking decision that promulgated General Order 158-A did not discuss § 5.03 specifically, but described § 5.01

through § 5.04 in passing as "fitness and safety" provisions. *Re Regulation of Passenger Carrier Servs. Decision*, 33 CPUC 2d 5 (Cal. CPUC, Oct. 12, 1989). Moreover, in *Prime Time*, the PUC considered whether certain practices used by a shuttle service provider satisfied the "complete supervision" requirement, although the commission did so without providing a comprehensive definition of that requirement. *Prime Time*, 1996 WL 465519, at *13-*23. The kinds of issues the PUC considered in deciding if Prime Time was exercising "complete supervision" were all closely related to safety and service standards, such as driver reliability, safety of operations, unsafe shift length, van inspection rules, and passenger understanding of what recourse they could take if something went wrong. *Id.*

**[10]** These two precedents of the PUC, coupled with the general mission of the PUC to protect public health and safety with respect to public utilities, indicate that the more reasonable reading of § 5.03 is that it allows a PSC to use drivers that are either employees or independent contractors, as traditionally defined by California law, as long as it maintains "complete supervision, direction and control" over those drivers with respect to health, safety, and service reliability issues. To the extent that the level of supervision and control required by § 5.03 may be in tension with the level of control that is one factor in the creation of an employment relationship, that tension may cause some uncertainty for airport shuttle companies. The proper response to such uncertainty, however, is not to insist that a *de facto* employee under California law is somehow transformed into an independent contractor, but to seek clarification of § 5.03's precise meaning from the PUC.

**[11]** Accordingly, because the requirements of § 5.03 are not synonymous with the test used by California courts to determine employment status, the district court would be making a distinct inquiry from the one that would be made by the PUC in a regulatory proceeding concerning the PSC-driver relationship. Thus, the court's actions would not hinder

or interfere with the jurisdiction of the PUC as forbidden by § 1759. In fact, by determining the SuperShuttle drivers' employment status, the court would likely be acting in *aid* of the PUC's jurisdiction, as approved of in *Hartwell*, because that is a determination that the PUC itself has repeatedly stated is outside of its jurisdiction. *Hartwell*, 38 P.3d at 1112; PUC *Amicus* Br. at 4.

[12] For the foregoing reasons, the third *Covalt* prong is not satisfied, California Public Utilities Code § 1759 is not implicated, and the district court retains subject matter jurisdiction over this case. On remand, the district court may determine whether the SuperShuttle drivers were employees or independent contractors under California law without hindering or interfering with PUC decisions or policies.

## IV.   Conclusion

For the reasons set forth above, we reverse the district court's order dismissing Plaintiffs' California state law claims and remand for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**