[No. B234794. Second Dist., Div. Eight. Oct. 17, 2012.]

HIREEM ELIJAHJUAN et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
MIKE CAMPBELL & ASSOCIATES, LTD., et al., Real Parties in Interest.

**COUNSEL**

Schonbrun DeSimone Seplow Harris Hoffman & Harrison, Wilmer J. Harris and Sami N. Khadder for Petitioners.

No appearance for Respondent.

Hanson Bridgett, Raymond F. Lynch, Sarah D. Mott and Molly A. Lee for Real Parties in Interest.

**OPINION**

**FLIER, J.**—The difference between an employee and an independent contractor is significant if for no other reason than employees enjoy benefits not afforded independent contractors. Here, petitioners alleged that real parties in interest misclassified them as independent contractors when they were employees. That allegation underlies every cause of action in this lawsuit.

The sole substantive issue on appeal is whether the parties agreed to arbitrate their dispute. We conclude that the dispute falls outside the arbitration provision, which applies only to disputes regarding the "application or interpretation" of the parties' contracts. The dispute in this case is unrelated to the substance of the parties' contractual obligations, and instead depends on extracontractual legal obligations an employer owes its employees, but does not owe its independent contractors. The trial court granted real parties in interest's motion to compel arbitration. We treat this appeal from a nonappealable order as a petition for writ of mandate, and grant the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Hireem Elijahjuan, Dave Van Huynh, Julio Hernandez, and James Love filed a first amended complaint (FAC) on their own behalf and on behalf of all others similarly situated (petitioners). Mike Campbell & Associates, Ltd.,

and Mike Campbell & Associates Logistics, LLC, were named as defendants (collectively real parties in interest). According to the FAC, each petitioner and each member of the proposed class was misclassified as an independent contractor instead of an employee. As a result, real parties in interest committed numerous violations of the Labor Code,[1] violations of the Unfair Business Practices Act (Bus. & Prof. Code, § 17200 et seq.), and negligent misrepresentations.[2]

Real parties in interest moved to compel arbitration, attaching agreements containing dispute resolution provisions signed by Van Huynh and Hernandez (Agreements). Petitioners do not challenge the trial court's finding that petitioners were bound by the dispute resolution provision in the Agreements, which provided:

"11. DISPUTE RESOLUTION

"Having entered into this Agreement in good faith, the Parties agree that the terms and procedures set forth herein shall be controlling if a dispute arises with regard to its *application or interpretation.* [¶] . . . [¶]

"11.2 <u>Arbitration</u>. If after the expiration of the thirty (30) day period, a dispute is not resolved voluntarily the Parties shall submit the matter for final and binding arbitration . . . . The award of the arbitrator *may be enforced in any court of competent jurisdiction.* [¶] . . . [¶]

"11.4 <u>Discretion of Arbitrator</u>.

"(a) The arbitrator shall base the award on the terms of this Agreement, federal transportation law, including existing judicial and administrative precedence, and by the arbitration law of the Federal Arbitration Act, title 9 U.S. Code. The arbitrator shall apply each in the order of precedence with the former having primary control." (Italics added.)

In opposition to the motion to compel arbitration, petitioners argued, among other things, that their claims of misclassification did not arise out of

---

[1] Undesignated statutory citations are to the Labor Code unless otherwise noted.

Specifically, petitioners claim real parties in interest failed to reimburse them for business expenses (§ 2802), unlawfully deducted part of their wages (§§ 221, 223, 400–410), unlawfully coerced purchases (§ 450 et seq.), failed to keep accurate payroll records and properly itemize wage statements (§ 226), and failed to pay wages as earned upon termination or resignation (§§ 201–204).

[2] The trial court granted a demurrer to petitioners' causes of action for fraud and conversion. After the petition to compel was granted and after the notice of appeal was filed, petitioners filed a second amended complaint. The parties do not argue that the second amended complaint is relevant to the proceeding in this court and we do not consider it.

or require interpretation of the Agreements. Real parties in interest countered that the Agreements "set forth all of the terms and conditions of the business relationship between [petitioners] and [real parties in interest] including [petitioners'] ability to subcontract work and their ability to contract with other companies during the term of the agreements." The trial court granted the motion to compel arbitration of all claims except for the alleged violations of the Unfair Business Practices Act, which the court severed and stayed. The court rejected petitioners' request for classwide arbitration.

## DISCUSSION

### 1. *Appealability*

An order compelling arbitration is not appealable. (*Muao v. Grosvenor Properties, Ltd.* (2002) 99 Cal.App.4th 1085, 1088–1089 [122 Cal.Rptr.2d 131].) To overcome this obstacle, petitioners rely on the "death knell" doctrine, which renders appealable orders that "effectively terminate class claims but permit individual claims to continue." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 [122 Cal.Rptr.3d 153, 248 P.3d 681] (*Baycol*).) Another case has used the death knell doctrine to consider an appeal of an order compelling the individual arbitration of a class claim. (See *Franco v. Athens Disposal Co., Inc.* (2009) 171 Cal.App.4th 1277, 1288 [90 Cal.Rptr.3d 539] (*Franco*).)

*Franco*, however, is distinguishable from this case because the order compelling arbitration in *Franco* terminated all class claims. The *Franco* court "effectively limit[ed] the arbitration to [the] plaintiff's claims." (*Franco, supra*, 171 Cal.App.4th at p. 1282, italics omitted.) In contrast, here the court stayed litigation on the alleged violations of the Unfair Business Practices Act. The court therefore did not effectively terminate class claims, a prerequisite for the death knell doctrine. As *Baycol, supra*, 51 Cal.4th at pages 757–758, explained: "[O]rders that only limit the scope of a class or the number of claims available to it are not similarly tantamount to dismissal and do not qualify for immediate appeal under the death knell doctrine; only an order that entirely terminates class claims is appealable."

"An appellate court has discretion to treat a purported appeal from a nonappealable order as a petition for writ of mandate . . . ." (*H. D. Arnaiz, Ltd. v. County of San Joaquin* (2002) 96 Cal.App.4th 1357, 1366–1367 [118 Cal.Rptr.2d 71].) We conclude that issuance of the writ is warranted in this unusual case. The issue of arbitrability in this case is one of law and has been fully briefed. (See *Olson v. Cory* (1983) 35 Cal.3d 390, 401 [197 Cal.Rptr. 843, 673 P.2d 720].) Additionally, the record is adequate to consider the issues, and there is no indication the trial court would be more than a nominal

party. (*H. D. Arnaiz, Ltd., supra*, at p. 1367.) If we were to dismiss the appeal, the ultimate reversal of the order would be inevitable, and would follow the substantial expense of completing an arbitration. (*Branham v. State Farm Mut. Auto. Ins. Co.* (1975) 48 Cal.App.3d 27, 32–33 [121 Cal.Rptr. 304] [treating an order compelling arbitration as a petition for writ of mandate]; see *Schultz v. Regents of University of California* (1984) 160 Cal.App.3d 768, 788 [206 Cal.Rptr. 910] [treating purported appeal from denial of summary judgment as petition for writ of mandate].) To dismiss the appeal and require the parties to proceed to arbitration of nonarbitral claims would be " ' "unnecessarily dilatory and circuitous." ' [Citation.]"[3] (*Olson v. Cory, supra*, at p. 401.)

## 2. *Arbitrability*

■ "California law, like federal law, favors enforcement of valid arbitration agreements." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669]; see *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 498 [145 Cal.Rptr.3d 432].) "The Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) incorporates a strong federal policy of enforcing arbitration agreements, including agreements to arbitrate statutory rights." (*Armendariz*, at pp. 96–97.) However, the preference for arbitration extends only to those disputes the parties agree to arbitrate. (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653 [35 Cal.Rptr.2d 800]; see *AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648 [89 L.Ed.2d 648, 106 S.Ct. 1415].) In determining contractual arbitrability, the threshold issue is whether the parties agreed to arbitrate their dispute— i.e., whether the contract included or excluded the dispute from its arbitration clause. (*Engineers & Architects Assn.*, at p. 653.)

■ "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. (Civ. Code, § 1636.) If contractual language is clear and explicit, it governs. (Civ. Code, § 1638.)" (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1264 [10 Cal.Rptr.2d 538, 833 P.2d 545].) Because the language of the arbitration provision was not in dispute and no conflicting evidence regarding its meaning was presented, we consider its meaning de novo. (*Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 707 [111 Cal.Rptr.3d 876].)

The crucial issue is whether the arbitration provision—which applies to any dispute that "arises with regard to [the Agreements'] application or

---

[3] Real parties in interest's motion to dismiss the appeal is denied.

interpretation"—includes the alleged misclassification of petitioners as independent contractors, the cornerstone of each cause of action in the FAC. We conclude that the current dispute falls outside the ambit of the arbitration provision.

Petitioners' lawsuit does not concern the application or interpretation of the Agreements, but instead seeks to enforce rights arising under the Labor Code benefitting employees but not independent contractors. No allegation in the FAC is based on rights afforded petitioners under the terms of the Agreements. The parties' dispute therefore cannot be characterized as regarding the application or interpretation of the Agreements.

*Narayan v. EGL, Inc.* (9th Cir. 2010) 616 F.3d 895, 899 (*Narayan*) explains the distinction between rights arising under a contract and those arising under a Labor Code statute. The issue in *Narayan* was whether a contractual choice of law provision requiring use of Texas law applied to alleged California Labor Code violations. The appellate court explained that the alleged Labor Code violations did not arise out of the contract, reasoning that the plaintiffs' claims for relief were dependent on whether they were employees (as opposed to independent contractors), which in turn was dependent "on the definition that the otherwise governing law—not the parties—gives to the term 'employee.' " (*Ibid.*) The court further explained that although the contracts were relevant, the Labor Code claims did not arise out of them, stating: "While the contracts will likely be used as evidence to prove or disprove the statutory claims, the claims do not arise out of the contract, involve the interpretation of any contract terms, or otherwise require there to be a contract." (*Ibid.*)

Although *Narayan* involved a choice of law provision, its reasoning is applicable here. As in *Narayan*, petitioners' claims do not arise out of the Agreements. As in *Narayan*, although the Agreements may be relevant to prove or disprove the alleged misclassification—as they describe petitioners as independent contractors—their materiality does not show the claims arise out of the Agreements. The critical dispute in this case is not whether the Agreements describe petitioners as independent contractors—they clearly do—but whether petitioners were in fact independent contractors under the applicable legal principles.

A portion of real parties in interest's brief actually makes this clear. Real parties in interest argue that to assess whether a worker is an employee or independent contractor, the court must consider " 'whether the worker is engaged in a distinct occupation or business, the skill required in the particular occupation, whether the employer or the worker supplies the tools and the place of work, the length of time for which the services are to be

performed, whether the worker is paid by time or by the job, whether the work is a part of the regular business of the employer, and the kind of relationship the parties believe they are creating.' " (Quoting *Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 303 [111 Cal.Rptr.3d 787].) The assessment of these factors is extracontractual and involves neither the application nor the interpretation of the Agreements. It involves consideration of petitioners' actual work. Moreover, even though the Agreements state that petitioners are independent contractors, "[t]he label placed by the parties on their relationship is not dispositive . . . ." (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349 [256 Cal.Rptr. 543, 769 P.2d 399].)

For these reasons, the court in *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193 [142 Cal.Rptr.3d 312] (*Hoover*) held that statutory Labor Code claims were outside the scope of the arbitration provision that required the parties to arbitrate disputes " 'arising out of or relating to this contract' " and " 'all disputes, claims, questions, and controversies of any kind or nature arising out of or relating to this contract.' " (*Id.* at p. 1208.) The court explained that the arbitration provision—which is even broader than the one in the present case—did not encompass statutory Labor Code claims. (*Ibid.*) The contract "does not reflect an agreement to arbitrate [the plaintiff's] claims, as asserted under state law, rather than her claims under the contract."[4] (206 Cal.App.4th at p. 1208.)

The distinction between contractual claims and statutory claims has been explained by the United States Supreme Court in the context of determining whether a collective bargaining agreement required arbitration of a claim under the Americans with Disabilities Act of 1990 (ADA; 42 U.S.C.S. § 12101 et seq.). (*Wright v. Universal Maritime Service Corp.* (1998) 525 U.S. 70 [142 L.Ed.2d 361, 119 S.Ct. 391].) Although there is a presumption of arbitrability under collective bargaining agreements, contractual language requiring the arbitration of "disputes related to the agreement" did not include a claim under the ADA. (*Wright*, at pp. 78, 81–82.) A cause of action for discrimination arose out of the ADA, not the parties' collective bargaining agreement. (525 U.S. at p. 79.) The plaintiff's rights under the ADA were "distinct" from any right under the parties' agreement. (525 U.S. at p. 79.)

---

[4] We do not rely on *Hoover*'s alternate holding that the Federal Arbitration Act (9 U.S.C. § 1 et seq.) was inapplicable because the parties' contracts did not involve interstate commerce. (*Hoover, supra,* 206 Cal.App.4th at pp. 1207–1208.) That *Hoover* had alternate holdings does not render one dicta. (*Cal. Emp. etc. Com. v. Municipal Ct.* (1944) 62 Cal.App.2d 781, 787 [145 P.2d 361] [" 'It is well settled that where two independent reasons are given for a decision, neither one is to be considered mere dictum, since there is no more reason for calling one ground the real basis of the decision than the other. The ruling on both grounds is the judgment of the court and each is of equal validity.' [Citations.]"].)

Similarly, here petitioners' rights under the Labor Code are distinct from their contractual rights under the Agreements. The ultimate issue this lawsuit must determine is whether real parties in interest satisfied the requirements of the Labor Code, not how the parties described their relationship in the Agreements. The parties' own label does not control whether petitioners are independent contractors. (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations, supra,* 48 Cal.3d at p. 349.) The agreement to arbitrate disputes concerning the application and interpretation of the Agreements therefore does not include the claims in this lawsuit.

This analysis is confirmed by section 11.4 of the Agreements, which limits the arbitrator to basing his or her award on "the terms of this Agreement, federal transportation law, . . . and . . . the arbitration law of the Federal Arbitration Act" and thereby excludes the only law relevant to the current dispute. Under the terms of the Agreements, the arbitrator is not empowered to apply California law to analyze the Labor Code claims. Although the Agreements also specify that it "shall be interpreted in accordance with the laws of the State of California," petitioners' Labor Code claims do not involve the interpretation of the Agreements. A construction that requires an arbitrator to consider petitioners' claims under federal transportation law and the Federal Arbitration Act is unpersuasive as even real parties in interest apply California law to distinguish between an employee and an independent contractor.

Neither *Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 681, footnote 2, 686 [99 Cal.Rptr.2d 809] (*Coast*) nor *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130] (*Berman*) compels a different conclusion. *Coast* stands for the unremarkable proposition that a tort claim arising out of a contract falls within a contractual arbitration provision covering " '[a]ny problem or dispute arising under this Agreement and/or concerning the terms of this Agreement.' " (*Coast, supra,* at p. 681, fn. 2, italics omitted.) The gravamen of each offense in *Coast* was that the rates specified in the contract were too low, and the claims therefore arose under the agreement. (*Id.* at pp. 682, 684–685.) The set rates were based only on the agreement, not on a state or federal law. Similarly, in *Berman,* the court held that "[t]he phrase 'any controversy . . . arising out of or relating to this contract . . .' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract." (*Berman,* at p. 1003.)

While the tort claims in *Berman* and *Coast* were rooted in the contract, here petitioners' statutory claims are not. The parties' Agreements did not encompass any claims arising out of the contract, let alone any claims

arising out of its application or interpretation. More importantly, the Labor Code claims do not arise out of the contract but instead are distinct from rights under the Agreements. The arbitration provision in this case is much more narrow and obviously differs from one encompassing " 'any and all employment-related disputes.' " (*Brown v. Ralphs Grocery Co.* (2011) 197 Cal.App.4th 489, 495 [128 Cal.Rptr.3d 854].)[5] In short, because the parties did not agree to arbitrate the dispute in this case, the order compelling arbitration must be reversed.

## DISPOSITION

Let a peremptory writ of mandate issue commanding the trial court to vacate its order compelling arbitration and issue a new order denying real parties in interest's motion to compel arbitration. Petitioners are entitled to costs in this proceeding.

Rubin, Acting P. J., concurred.

**GRIMES, J., Dissenting.**—I respectfully disagree with my colleagues' conclusion that the parties' dispute does not fall within the arbitration provisions of their contracts and that it is unnecessary to decide the remaining issues in this appeal. For the reasons below, I would reach the other bases of the trial court's ruling, affirming in part and conditionally reversing in part and remanding for the trial court to consider whether the arbitration provisions are unconscionable.

Plaintiffs are owner-operator truckdrivers who make deliveries to defendants' customers. Plaintiffs sued defendants, claiming their contracts with defendants, the "Broker/Carrier Agreement" or the "Transportation Agreement," incorrectly characterize plaintiffs as independent contractors. The agreements include extensive provisions regarding plaintiffs' compensation. Nevertheless, plaintiffs claim they are employees and were denied wage and hour benefits under the Labor Code. The parties' contracts contain dispute resolution provisions requiring the parties to submit their disputes to arbitration.

Defendants moved to compel arbitration, and the trial court granted the motion. The court declined to decide whether the arbitration provisions were unconscionable, finding that *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [179 L.Ed.2d 742, 131 S.Ct. 1740] (*Concepcion*) abrogated the state law rule that an arbitration agreement should not be enforced if it is

---

[5] Because we conclude the order compelling arbitration must be vacated, we need not consider the parties' remaining arguments.

unconscionable. The trial court reasoned that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applied, and that plaintiffs were not exempt from arbitration under section 1 of the FAA, which exempts contracts of employment of transportation workers. (9 U.S.C. § 1.) The trial court concluded the exemption does not apply because plaintiffs are independent contractors, and not employees. The trial court also found that the parties did not agree to classwide arbitration.

I would affirm the trial court's finding that the FAA applies to the parties' dispute. Plaintiffs' claims challenge whether the agreements control the terms of their compensation, or whether the Labor Code applies. Such a dispute falls squarely within the language of the arbitration clause, which requires arbitration of all disputes "with regard to [the] application or interpretation" of the parties' agreements. Also, substantial evidence supports the trial court's finding that plaintiffs are independent contractors. However, this finding is preliminary for the purpose of deciding whether plaintiffs fall within the exemption under section 1 of the FAA, and has no preclusive effect in the arbitration.

I would also affirm the trial court's finding that the parties did not agree to classwide arbitration. Their agreements are silent on class treatment of disputes, and plaintiffs do not claim any implied agreement to resolve class claims in arbitration.

However, I would conditionally reverse and remand because the trial court declined to decide plaintiffs' claims that the agreements are unconscionable. Although recent cases have made clear that classwide arbitration is not part of the unconscionability analysis, the other claims of unconscionability are not preempted by the FAA and must be decided, such as the limitation of remedies and inequality in bargaining power. Therefore, I would conditionally reverse so the trial court may decide whether the agreements are unconscionable. If the trial court were to conclude that the agreements are not unconscionable, then the order compelling arbitration would be reinstated. If unconscionable, and the unconscionable terms may not be stricken, then the order compelling arbitration would be vacated.

## DISCUSSION

The parties do not dispute that their agreements call for application of the FAA. It is undisputed that the agreements between the parties affect interstate commerce. Plaintiffs resist arbitration on several grounds, contending the controversy over misclassification is outside the scope of the arbitration agreements; plaintiffs, as transportation workers, are exempt from the FAA;

and the arbitration agreements are unconscionable or otherwise unenforceable. Plaintiffs also contend that the trial court erred in ordering individual rather than classwide arbitration.

1. *The Claims Are Arbitrable.*

When an arbitration agreement is subject to the FAA, "questions concerning the construction and scope of the arbitration clause are determined by federal law." (*Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 1263 [265 Cal.Rptr. 381].) Arbitration is strongly favored, and any doubts concerning the scope of arbitrable issues will be resolved in favor of arbitration. (*United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808 [9 Cal.Rptr.2d 702].) When deciding whether the parties agreed to arbitrate a dispute, courts generally apply ordinary state law principles of contract interpretation. (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944 [131 L.Ed.2d 985, 115 S.Ct. 1920].) Notwithstanding the policy favoring arbitration, because " 'arbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' " (*AT&T Technologies v. Communications Workers* (1986) 475 U.S. 643, 648 [89 L.Ed.2d 648, 106 S.Ct. 1415] (*AT&T Tech.*); see *Lawrence v. Walzer & Gabrielson* (1989) 207 Cal.App.3d 1501, 1505 [256 Cal.Rptr. 6].) The party opposing arbitration has the burden to show that the agreement does not apply to the dispute. (*Buckhorn v. St. Jude Heritage Medical Group* (2004) 121 Cal.App.4th 1401, 1406 [18 Cal.Rptr.3d 215].)

The relevant portions of the parties' agreements provide:

"11. DISPUTE RESOLUTION

"Having entered into this Agreement in good faith, the Parties agree that the terms and procedures set forth herein shall be controlling if a dispute arises with regard to its application or interpretation."

"11.2 Arbitration. If after the expiration of the thirty (30) day period, a dispute is not resolved voluntarily, the Parties shall submit the matter for final and binding arbitration . . . . The award of the arbitrator may be enforced in any court of competent jurisdiction."

"11.4 Discretion of Arbitrator.

"(a) The arbitrator shall base the award on the terms of this Agreement, federal transportation law, including existing judicial and administrative precedence, and by the arbitration law of the Federal Arbitration Act, title 9

U.S. Code. The arbitrator shall apply each in the order or precedence with the former having primary control."

"13.1 <u>Governing Law</u>. This Agreement shall be interpreted in accordance with the laws of the State of California, disregarding any choice-of-law principle under which that State would look to the laws of another jurisdiction. . . ."

The majority opinion concludes that the dispute between the parties was outside the scope of the arbitration clause, finding the "lawsuit does not concern the application or interpretation of the Agreements, but instead seeks to enforce rights arising under the Labor Code benefitting employees but not independent contractors." (Maj. opn., *ante*, at p. 21.) I believe the majority interpreted the agreements too narrowly and, in so doing, ignored well-settled law favoring arbitration and requiring that any doubt about the applicability of an arbitration clause must be "resolved in favor of arbitration." (*Steelworkers v. Warrior & Gulf Co.* (1960) 363 U.S. 574, 589 [4 L.Ed.2d 1409, 80 S.Ct. 1347].)

The arbitration clause applies to any "dispute [that] arises with regard to . . . application or interpretation" of the agreements. The agreements classify the "relationship of Carrier to Broker" as "that of an independent contractor." They provide that the "Carrier shall not be subject to the direction, control or supervision of Broker[.] . . . Under no circumstances shall employees or agents of Carrier be deemed employees . . . of Broker." The agreements have extensive provisions for the calculation of plaintiffs' compensation as carriers. The complaint alleges that plaintiffs were misclassified as independent contractors and were entitled to protections conferred upon employees by the Labor Code, notwithstanding the representations made in the agreements. The resolution of plaintiffs' claims requires an interpretation of the agreements and evaluation of the evidence to decide if the agreements apply to set the terms of plaintiffs' compensation, or if the agreements do not accurately describe the parties' relationship and the Labor Code governs plaintiffs' rightful compensation. In short, this dispute concerns the application and interpretation of the agreements and therefore falls within the arbitration clause.

Broad arbitration clauses such as this one are consistently interpreted as applying to extracontractual disputes between the contracting parties. (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 681, fn. 2, 686 [99 Cal.Rptr.2d 809] [where parties agreed to arbitrate " '[a]ny problem or dispute arising under this Agreement and/or concerning the terms of this Agreement' " (italics omitted), the arbitration agreement was broad enough to encompass tort claims]; *Berman v. Dean Witter & Co., Inc.*

(1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130] ["The phrase 'any controversy . . . arising out of or relating to this contract . . .' is certainly broad enough to embrace tort as well as contractual liabilities so long as they have their roots in the relationship between the parties which was created by the contract."].) The claims raised in the complaint challenge the agreements' characterization of the parties' relationship. Resolution of plaintiffs' claims requires a determination whether the agreements apply to set the terms of plaintiffs' compensation, or whether the Labor Code controls. Therefore, this dispute falls within the arbitration clause, which by its terms applies to any dispute with regard to the application of the agreements.

In my view, the majority opinion amounts to a judicial rule barring arbitration of wage and hour claims under the Labor Code in any contract that purports to have been made with an independent contractor, even a contract affecting interstate commerce. The high court has held that neither statutory nor judicial rules may interfere with enforcement of the FAA, so in my view, we are without authority to vacate the order compelling arbitration on this basis. (*Concepcion, supra,* 563 U.S. at p. ___ [131 S.Ct. at p. 1747] ["When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA."]; *Perry v. Thomas* (1987) 482 U.S. 483, 491 [96 L.Ed.2d 426, 107 S.Ct. 2520] [FAA preempts state law requirement that litigants be provided a judicial forum for wage disputes].)

Although the agreements require the arbitrator to "base the award on the terms of this Agreement, federal transportation law, including existing judicial and administrative precedence, and by the arbitration law of the Federal Arbitration Act, title 9 U.S. Code," this limitation should not be read to exclude this dispute from arbitration. Contract terms must be interpreted as a whole and in context, rather than in isolation. (*Thompson v. Toll Dublin, LLC* (2008) 165 Cal.App.4th 1360, 1370 [81 Cal.Rptr.3d 736]; Civ. Code, § 1641.) To construe this clause as a limitation on arbitrability cannot be reconciled with the expansive language used earlier in the agreement. (*AT&T Tech., supra,* 475 U.S. at p. 649 [clauses limiting the scope of arbitration are construed as narrowly as possible]; *Molecular Analytical Systems v. Ciphergen Biosystems, Inc.* (2010) 186 Cal.App.4th 696, 705 [111 Cal.Rptr.3d 876].) The parties agreed that California law governs their agreements, as the contract has a choice-of-law provision designating California law as governing the contract's interpretation.

The majority relies on *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193 [142 Cal.Rptr.3d 312] (*Hoover*). In that case, the Court of Appeal affirmed denial of the defendant employer's petition to compel arbitration, finding that the employer had waived its right to arbitrate the

plaintiff employee's claims for compensation under the Labor Code. (*Id.* at pp. 1205–1206.) In dicta, the court also found the plaintiff's statutory labor claims were not arbitrable. (*Id.* at p. 1206 ["Even if [the defendant] had not waived its right to assert arbitration, we would decide [the defendant] could not compel arbitration in the present case."].) I do not find the dicta in *Hoover* to be instructive here, because *Hoover* found the FAA did not apply to the parties' individual contracts since they did not involve interstate commerce. (206 Cal.App.4th at p. 1207.) And the arbitration agreement in the collective bargaining agreement did not apply to the plaintiff's individual statutory claims under established authorities construing the Fair Labor Standards Act of 1938 (29 U.S.C. § 201 et seq.). The *Hoover* court expressly acknowledged the FAA preempts the rule that statutory claims are not subject to private arbitration agreements when the arbitration agreement is in a contract involving interstate commerce. (206 Cal.App.4th at p. 1207.)

Indeed, the high court has established that statutory claims are arbitrable when the parties' contract involves interstate commerce and is therefore governed by the FAA. (*Mitsubishi Motors v. Soler Chrysler-Plymouth* (1985) 473 U.S. 614, 626 [87 L.Ed.2d 444, 105 S.Ct. 3346] ["There is no reason to depart from [the policy favoring arbitration] where a party bound by an arbitration agreement raises claims founded on statutory rights."].) Therefore, given the preference for arbitration and the broad language of the agreements, plaintiffs' claims that the Labor Code governs their compensation, and not the compensation terms of their agreements, fall within the ambit of the arbitration clause.

2. *Substantial Evidence Supports the Trial Court's Preliminary Finding That Plaintiffs Are Independent Contractors.*

Plaintiffs urge that even if their claims fall within the arbitration clause, they are nonetheless exempt from arbitration because the FAA does not apply to "contracts of employment of . . . workers engaged in foreign or interstate commerce." (9 U.S.C. § 1.) This exemption applies to "contracts of employment of transportation workers" (*Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 119 [149 L.Ed.2d 234, 121 S.Ct. 1302]), but does not apply to contracts establishing an independent contractor (rather than employment) relationship. (See, e.g., *Owner-Operator Independent Drivers v. Swift* (D.Ariz. 2003) 288 F.Supp.2d 1033, 1035–1036.)

Generally, it is for the court to determine the question of arbitrability, rather than the arbitrator. (*AT&T Tech., supra,* 475 U.S. at p. 649.) A court ruling on arbitrability usually does not reach the merits of the underlying dispute between the parties. (*Ibid.*) Here, because the exemption under section 1 of the FAA turns on whether plaintiffs are employees or independent

contractors, arbitrability and the underlying dispute are inextricably intertwined. The only court to consider whether a court must decide if a dispute is exempt from arbitration under section 1 of the FAA, even if that determination may incidentally reach the merits of the dispute, concluded that "the best reading of the law requires the . . . court to assess whether a Section 1 exemption applies before ordering arbitration." (*In re Van Dusen* (9th Cir. 2011) 654 F.3d 838, 846 (*Van Dusen*).)

In *Van Dusen*, the Ninth Circuit Court of Appeals denied a petition for writ of mandamus to compel the district court to decide the petitioners' claim of exemption. The petitioners, like plaintiffs in our case, were truckdrivers who signed independent contractor agreements but who claimed entitlement to wage and hour benefits as employees. The district court compelled arbitration without deciding whether the plaintiffs were employees, finding the arbitrator should make that determination. The Ninth Circuit found the petitioners made "a strong argument that the District Court erred," but declined to issue the writ. (*Van Dusen, supra*, 654 F.3d at p. 840.) Summarizing its views of the petitioners' arguments, the court found "the best reading of the law requires the district court to assess whether a Section 1 exemption applies before ordering arbitration. We acknowledge, however, that the law's repeated admonishments that district courts refrain from addressing the merits of an underlying dispute can be read to favor the District Court's decision. This factor, along with the lack of controlling precedent, render the question relatively close." (*Id.* at p. 846.) The Ninth Circuit declined to issue the writ because it could not find the district court committed "clear error." (*Ibid.*) That was because "the question in this case—whether the district court, as opposed to an arbitrator, must determine the applicability of an FAA exemption—is one of first impression in the federal courts of appeal." (*Id.* at p. 845.)

Following the analysis of the Ninth Circuit in *Van Dusen*, I would find the trial court correctly reached the question of whether plaintiffs are employees or independent contractors to determine whether the FAA exemption applies. (See *Rite Aid of Pennsylvania v. Food Workers Union, Local 1776* (3d Cir. 2010) 595 F.3d 128, 135–137 [discussing federal decisions interpreting arbitration clauses in collective bargaining agreements that "have made clear that where the merits and arbitrability questions are inextricably intertwined, a court's arbitrability decision may, of necessity, touch incidentally on the merits"].) Because in this case plaintiffs disputed that they are independent contractors, our review of the trial court's determination is under the substantial evidence standard of review. (*Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, 1511 [105 Cal.Rptr.3d 585].)

The question of whether plaintiffs are employees or independent contractors turns on the degree of control exercised by defendants. Although the

"control test" is the most important consideration, there are other indicia of the nature of the relationship, such as the right to discharge at will, and other factors, such as " '(a) whether the one performing services is engaged in a distinct occupation or business; (b) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the principal or by a specialist without supervision; (c) the skill required in the particular occupation; (d) whether the principal or the worker supplies the instrumentalities, tools, and the place of work for the person doing the work; (e) the length of time for which the services are to be performed; (f) the method of payment, whether by the time or by the job; (g) whether or not the work is a part of the regular business of the principal; and (h) whether or not the parties believe they are creating the relationship of employer-employee.' " (*Arzate v. Bridge Terminal Transport, Inc.* (2011) 192 Cal.App.4th 419, 425–426 [121 Cal.Rptr.3d 400] (*Arzate*).)

It was plaintiffs' burden to demonstrate they are employees and the FAA does not apply. (*Kam-Ko Bio-Pharm Trading Co. v. Mayne Pharma Inc.* (9th Cir. 2009) 560 F.3d 935, 940.) Plaintiffs' declarations provided somewhat conclusory facts. For example, plaintiff Dave Van Huynh declared that defendants "controlled my compensation and delivery schedules. I did not have any control over which customers I could work with or what deliveries I could take. All delivery assignments were . . . on a 'take it or leave it' basis. If I refused a specific assignment, I could be punished by [defendants] in the form of a fine." He also averred that he had to contact defendants' dispatchers to get his assignments, and that the dispatchers designated the schedule and route of the delivery. He could not negotiate his compensation rate, had to follow defendants' policies and procedures, and had to place defendants' logo on his truck. While his agreement with defendants was in force, he was not allowed to contract with other companies. He was not allowed to hire drivers without defendants' permission. Other employees submitted nearly identical declarations.

Many of the averments are contradicted by the express terms of the agreements, and plaintiffs' own evidence supports a finding of an independent contractor relationship. For example, the agreements are *not* exclusive and permit plaintiffs to provide transportation services for other companies. The agreements also state that plaintiffs were responsible for providing labor at their own discretion and expense. The agreements establish flat compensation rates depending upon the delivery destination city. Title on the trucks was held in plaintiffs' names, and they were compensated in a piece-rate manner, for each delivery made, with no tax deductions withheld from their checks.

Defendants offered evidence that plaintiffs maintained their own motor carrier permits and insurance, and drove their own trucks. Defendants did not

"hire drivers or maintain vehicles to transport property" and are not "licensed motor carrier[s]." Plaintiffs, and not defendants, hired and trained drivers. Plaintiffs were required to bear all expenses associated with their equipment. Plaintiffs were not paid wages, and received Internal Revenue Service 1099 forms. Defendants did not direct which route to take to make deliveries, and plaintiffs decided for themselves how to deliver the loads they accepted from defendants. Plaintiffs were also free to contract with other companies.

There was substantial evidence that the degree of control exercised by defendants is only that of a broker seeking a carrier to meet its customers' shipment needs. Plaintiffs owned their trucks, were paid by the delivery, and were required to maintain their own permits and insurance. These are indicia of an independent contractor, rather than an employment relationship. (*Arzate, supra*, 192 Cal.App.4th at pp. 425–426.)

Nevertheless, the trial court's finding that plaintiffs are independent contractors should not preclude the arbitrator from concluding that plaintiffs are employees. Attaching a preclusive effect to the trial court's finding would be contrary to the policy favoring arbitration, as it would substitute the judge for the arbitrator to decide the merits of the dispute. Additionally, the requirements for collateral estoppel are not satisfied, such as a final decision on the merits. (*Hernandez v. City of Pomona* (2009) 46 Cal.4th 501, 511 [94 Cal.Rptr.3d 1, 207 P.3d 506].) Given the summary nature of a motion to compel arbitration, and the limited facts available to the court and the parties, the trial court's preliminary findings regarding the relationship between the parties are not "final and on the merits."

3. *Unconscionability Must Be Decided.*

Plaintiffs asserted an unconscionability defense in opposition to defendants' motions to compel arbitration. The trial court, relying on the high court's opinion in *Concepcion*, concluded that the FAA preempts state law unconscionability defenses to arbitration, as set forth in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*), and therefore declined to rule on plaintiffs' claims of unconscionability. In my view, *Concepcion* answered only the narrow question of whether section 2 of the FAA, which permits arbitration agreements to be declared unenforceable "upon such grounds as exist at law or in equity for the revocation of any contract" (9 U.S.C. § 2), "preempts California's rule classifying most collective-arbitration waivers in consumer contracts as unconscionable." (*Concepcion, supra*, 563 U.S. at p. ___ [131 S.Ct. at p. 1746].)

After *Concepcion*, the high court issued its opinion in *Marmet Health Care Center v. Brown* (2012) 565 U.S. ___ [182 L.Ed.2d 42, 132 S.Ct. 1201],

reversing West Virginia's judicial rule that predispute arbitration agreements in a personal injury or wrongful death action against a nursing home are unenforceable because they violate public policy. However, the *Marmet* court remanded for further proceedings to reconsider the alternative basis for the opinion of the West Virginia Supreme Court of Appeals, that enforcement of the arbitration agreements would be unconscionable. (*Marmet, supra,* 565 U.S. at p. ___ [132 S.Ct. at p. 1204] ["On remand, the West Virginia court must consider whether, absent that general public policy [against arbitration of negligence actions against nursing homes], the arbitration clauses . . . are unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA."].) The *Marmet* opinion makes clear that common law principles of unconscionability apply to arbitration agreements so long as there is no categorical rule that is displaced by the FAA.

Meanwhile, there have been inconsistent appellate opinions in California about the scope of *Concepcion* as it may affect the unconscionability defense to enforcement of arbitration (except as to class action waivers),[1] but the California Supreme Court has not yet decided this question. Recently, however, the Supreme Court found the FAA applied in a construction defect dispute and then analyzed whether the arbitration clause was unconscionable under *Armendariz*—without any citation to *Concepcion*. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246–250 [145 Cal.Rptr.3d 514, 282 P.3d 1217].)

Therefore, I hesitate to conclude that *Concepcion* abrogated *Armendariz*, except to the extent that a categorical prohibition against classwide arbitration will no longer render an agreement to arbitrate unconscionable. As such, the trial court was required to entertain plaintiffs' unconscionability defense to arbitration, to the extent those challenges attacked the agreement to arbitrate rather than the contract as a whole. (*Buckeye Check Cashing, Inc. v. Cardegna* (2006) 546 U.S. 440, 445–446 [163 L.Ed.2d 1038, 126 S.Ct. 1204].)

An appellate court cannot, in the first instance, determine whether an agreement is unconscionable. (*Caron v. Mercedes-Benz Financial Services*

---

[1] See, e.g., *Caron v. Mercedes-Benz Financial Services USA LLC* (2012) 208 Cal.App.4th 7 [145 Cal.Rptr.3d 296] (*Concepcion* invalidates class action waiver in Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.) that would interfere with arbitration); *Nelsen v. Legacy Partners Residential, Inc.* (2012) 207 Cal.App.4th 1115 [144 Cal.Rptr.3d 198] (applying *Armendariz* factors but finding arbitration agreement was not unconscionable; declining to decide if *Concepcion* abrogates *Gentry v. Superior Court* (2007) 42 Cal.4th 443 [64 Cal.Rptr.3d 773, 165 P.3d 556] (*Gentry*)); *Truly Nolen of America v. Superior Court* (2012) 208 Cal.App.4th 487, 493 [145 Cal.Rptr.3d 432] ("Although *Concepcion*'s reasoning strongly suggests that *Gentry*'s holding is preempted by federal law, the United States Supreme Court did not directly rule on the class arbitration issue in the context of unwaivable statutory rights and the California Supreme Court has not yet revisited *Gentry*. Thus, we continue to be bound by *Gentry* under California's stare decisis principles.").

*USA LLC, supra,* 208 Cal.App.4th at p. 26.) Here, plaintiffs raised numerous arguments concerning the enforceability of the agreements, such as the limitation of remedies and that the contracts were adhesive. Therefore, I would conditionally reverse and remand so that the trial court can consider and decide these arguments. (*Id.* at p. 27.) If the trial court were to conclude that the arbitration provision is not unconscionable, then I would order the trial court to reinstate the order compelling arbitration. If unconscionable, and the unconscionable terms may not be stricken, then I would order the trial court to vacate the order compelling arbitration.

### 4. *The Parties Did Not Agree to Classwide Arbitration.*

Lastly, I would affirm the trial court's order for individual arbitration, because the agreements are silent as to class arbitration of disputes, and plaintiffs have never claimed there was an implicit agreement between the parties to submit any disputes to classwide arbitration. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.* (2010) 559 U.S. 662 [176 L.Ed.2d 605, 130 S.Ct. 1758] held that, under the FAA, a party may not be compelled to submit to class arbitration unless the arbitration contract provides a basis for concluding that the parties agreed to do so. (*Stolt-Nielsen S. A.,* at p. ___ [130 S.Ct. at p. 1775]; see *Reyes v. Liberman Broadcasting, Inc.* (2012) 208 Cal.App.4th 1537, 1543–1545 [146 Cal.Rptr.3d 616].) Here, the agreements are completely silent about class arbitration of claims, and therefore, there is no basis for concluding that defendants consented to class arbitration. I am not persuaded by plaintiffs' argument that the National Labor Relations Act's guarantee of the right to form labor organizations and unions (29 U.S.C. § 157) somehow guarantees a right to class arbitration of employment disputes.

A petition for a rehearing was denied November 8, 2012, and petitioners' petition for review by the Supreme Court was denied January 16, 2013, S206886.