Filed 6/24/24  Rayhrer v. Community Memorial Health System  CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CONSTANZE RAYHRER, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> COMMUNITY MEMORIAL HEALTH SYSTEM, et al., <br><br> Defendants and Appellants. | 2d Civil No. B324707 <br> (Super. Ct. No. 56-2022-00565843-CU-OE-VTA) <br> (Ventura County) |

Community Memorial Health System (CMHS) appeals the trial court's order denying its petition to compel arbitration of Constanze Rayhrer's complaint alleging violations of the Fair Employment and Housing Act (Gov. Code, § 12900, et seq.) ("FEHA") and the Labor Code.  CMHS contends the trial court erred when it found Rayhrer's claims fell outside the scope of the arbitration provisions included in the parties' many written agreements.  Rayhrer contends the arbitration provisions do not apply because her claims are statutory and not based on

the contracts. She further contends the arbitration provisions are unconscionable and, therefore, unenforceable. We agree with the trial court that Rayhrer's claims fall outside the language of the various arbitration provisions. Because we conclude Rayhrer's claims are not subject to arbitration, we do not reach the question whether the arbitration provisions are also unconscionable. We affirm.

*Facts*

In 2008, Rayhrer and CMHS signed a Physicians Services Agreement under which Rayhrer agreed to provide on-call coverage services as a physician in CMHS's emergency department. As relevant here, the agreement described Rayhrer as an independent contractor and provided that it would be "governed by and construed in accordance with the laws of the State of California." A paragraph entitled "Disagreements," provides, "Questions or disagreements concerning the terms of this Agreement shall be submitted to the Chief Financial Officer [and then] to the Chief of Staff and Chief Executive Officer for resolution. If such disputes or questions still are not resolved satisfactorily, then they shall be submitted to and resolved by binding arbitration." This agreement was amended many times, with each amendment leaving the independent contractor, governing law and arbitration provisions "in full force and effect."[1]

Beginning in 2012, the parties signed annual letter agreements under which Rayhrer agreed to serve as a Teaching Physician in CMHS's Graduate Medical Education program,

---

[1] A different result may have obtained had the arbitration provision recited broader language, e.g., "arising out of or relating to the agreement." (See p. 9, *post*.)

training medical students and residents in general surgery. The letter agreements describe Rayhrer as an independent contractor and provide that they will be "construed, interpreted and enforced" under California law.

Each letter agreement also includes a "Dispute Resolution" provision. These provisions state, "Should any questions or disagreements arise under this Agreement, CMHS and Teaching Physician agree at the request of either party, to meet and confer in good faith concerning the issues in question within thirty (30) days of such a request. Should the parties be unable to resolve such disagreements in this manner, the matter shall be submitted to final and binding arbitration . . . . THE PARTIES UNDERSTAND AND AGREE THAT THEY ARE WAIVING ALL RIGHTS TO TRIAL BY JURY."

In 2017 and 2018, the parties signed letter agreements appointing Rayhrer the Associate Program Director for general surgery. With the exception of the job title, these letter agreements are identical to the teaching physician letter agreements.

Rayhrer's complaint alleges that she was misclassified as an independent contractor and that CMHS violated both FEHA and the Labor Code when it refused to promote her to Program Director in general surgery and illegally demoted her from Associate Program Director to Teaching Physician. She further alleges that CMHS's conduct discriminated against her, harassed and retaliated against her based on her gender and that she was wrongfully terminated in violation of FEHA and the Labor Code.

CMHS filed a petition to compel arbitration. While it has not specified which of the parties' written contracts applies

3

here, CMHS contends the arbitration provisions apply broadly to encompass Rayhrer's misclassification and statutory claims. Rayhrer contends her claims are not within the scope of the arbitration provisions because she is not alleging a breach of any of the agreements; she alleges that CMHS violated rights conferred by statute.

The trial court agreed with Rayhrer and denied the petition to compel arbitration. While it found the agreements are not unconscionable, it concluded their arbitration provisions were too narrowly drafted to encompass Rayhrer's statutory claims.

*Standard of Review*

The question whether the parties' written agreements contain enforceable arbitration provisions that require arbitration of the causes of action alleged in Rayhrer's complaint is one of law. We review the matter de novo. (*Avery v. Integrated Healthcare Holdings, Inc.* (2013) 218 Cal.App.4th 50, 60 (*Avery*); *Coast Plaza Doctors Hosp. v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 684.)

*Discussion*

Both the Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the California Arbitration Act (Code Civ. Proc., § 1280, et seq.) express a basic policy favoring the enforcement of valid arbitration agreements. (*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97, abrogated in part on another ground in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 340-341.) "The fundamental policy underlying both acts 'is to ensure that arbitration agreements will be enforced *in accordance with their terms*.'" (*Avery, supra,* 218 Cal.App.4th at p. 59, quoting *Vandenberg v. Superior Court* (1999) 21 Cal.4th

4

815, 836, fn. 10.)  As the Supreme Court noted in *Morgan,* arbitration agreements are "'as enforceable as other contracts, but not more so.'"  (*Morgan, supra,* at p. 418, quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.* (1967) 388 U.S. 395, 404, fn. 12.)

In deciding whether parties have agreed to arbitrate a particular dispute, "courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*First Options of Chicago, Inc. v. Kaplan* (1995) 514 U.S. 938, 944.)  Because arbitration is "a matter of consent, not coercion," parties may limit by contract both the issues subject to arbitration and the rules under which arbitration will proceed. (*Volt Information Sciences, Inc. v. Board of Trustees of Leland Stanford Junior University* (1989) 489 U.S. 468, 479; see also *Pinnacle museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC* (2012) 55 Cal.4th 223, 236.)  "Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA, even if the result is that arbitration is stayed where the Act would otherwise permit it to go forward." (*Volt Information Sciences,* at p. 479.)  Thus, we apply California law to determine whether the parties formed a valid agreement to arbitrate this dispute.  (*Vaughn v. Tesla, Inc.* (2023) 87 Cal.App.5th 208, 218.)

California recognizes both a presumption favoring arbitrability and a requirement that arbitration agreements be enforced according to the same standards that apply to contracts in general.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-972.)  Our strong policy favoring arbitrability has resulted in the general rule that arbitration should be

5

required ""“unless it can be said with assurance that an arbitration clause is not susceptible to an interpretation covering the asserted dispute. . . .”"" (*EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1321.)  However, an equally well-established rule of construction provides that "where, as here, the written agreement has been prepared entirely by the employer . . . any ambiguities must be construed against the drafting employer and in favor of the nondrafting employee. [Citations.]  Moreover, '[t]he rule requiring the resolution of ambiguities against the drafting party "applies with peculiar force in the case of a contract of adhesion. . . .”"" (*Sandquist v. Lebo Automotive, Inc.* (2016) 1 Cal.5th 233, 248, overruled in part on another ground in *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. 176.)

Here, the parties entered into two types of agreements between 2008 and 2021.  All of these agreements were drafted entirely by CMHS.  The record indicates their arbitration provisions were not subject to negotiation.  First, the parties entered into a Physician Services Agreement and at least one amendment to it.  Second, the parties entered into a series of letter agreements under which respondent agreed to serve as a Teaching Physician and Associate Program Director in appellant's Graduate Medical Education program.

Each agreement describes Rayhrer as an independent contractor and provides that the agreements will be "governed by and construed in accordance with" California law.  The Physician Services Agreement provides that if, "Questions or disagreements concerning the terms of this Agreement" cannot be resolved by the Chief Financial Officer, the Chief of Staff and the Chief Executive Officer, "such disputes or questions . . . shall be

6

submitted to and resolved by binding arbitration." The Teaching Physician and Associate Program Director Letter Agreements provide, "Should any questions or disagreements arise under this Agreement, [appellant] and [respondent] agree at the request of either party, to meet and confer in good faith concerning the issues in question within thirty (30) days of such a request. Should the parties be unable to resolve such disagreements in this manner, the matter shall be submitted to . . . binding arbitration . . . ."

Appellants contend these "broad" arbitration provisions require "arbitration of all disputes between the parties arising under the agreements," including "disputes as to core issues, such as the very nature of the parties' relationship . . . ." Respondent contends her claims are not covered by the arbitration provisions because her claims arise out of the Labor Code and FEHA, not the terms of her contracts with appellant. We agree with respondent. Like the trial court, we conclude respondent's claims fall outside the scope of the arbitration provisions because those provisions apply only to "questions or disputes" or "disagreements" that "arise under" or "concern[] the terms of" the relevant agreement. Respondent's causes of action relating to gender-based discrimination, harassment and retaliation arise under FEHA and the Labor Code, not the Letter Agreements or Physician Services Agreements.

In *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15 (*Elijahjuan*), the petitioners alleged they were misclassified as independent contractors and that the companies for whom they provided services violated provisions of the Labor Code that do not apply to independent contractors. The parties' agreements provided, "'Having entered into this Agreement in

7

good faith, the Parties agree that . . . if a dispute arises with regard to its *application or interpretation*," the dispute would be submitted "for final and binding arbitration." (*Id.* at p. 18.) The court concluded petitioners were not required to arbitrate their claims because, "Petitioners' lawsuit does not concern the application or interpretation of the Agreements, but instead seeks to enforce rights arising under the Labor Code benefitting employees but not independent contractors. No allegation in the [complaint] is based on rights afforded petitioners under the terms of the Agreements. The parties' dispute therefore cannot be characterized as regarding the application or interpretation of the Agreements." (*Id.* at p. 21.)

*Elijahjuan, supra,* 210 Cal.App.4th 15, rejected the contention that petitioners' misclassification allegations were subject to arbitration under their agreements. "[A]lthough the Agreements may be relevant to prove or disprove the alleged misclassification – as they describe petitioners as independent contractors – their materiality does not show the claims arise out of the Agreements. The critical dispute in this case is not whether the Agreements describe petitioners as independent contractors – they clearly do – but whether petitioners were in fact independent contractors . . . ." (*Id.* at p. 21.) Because the factors that control whether an individual is properly classified as an independent contractor are "extracontractual," the evaluation of those factors "involves neither the application nor the interpretation of the Agreements. It involves consideration of petitioners' actual work." (*Id.* at p. 22.)

*De La Luz Perez Bautista v. Juul Labs, Inc.* (N.D. Cal. 2020) 478 F.Supp.3d 865 reached the same conclusion where a political action committee classified its campaign workers as

independent contractors. Their agreement provided, "All disputes over the terms of this Agreement . . . shall be submitted to . . . [binding arbitration]." (*Id.* at pp. 867-868, italics omitted.) In concluding the workers were not required to arbitrate their claims that the political action committee violated federal and state wage and hour statutes, the court reasoned, "When coupled with the clear directive that arbitration provisions covering disputes 'arising out of this agreement' or 'arising hereunder' only cover claims arising from the contract terms, even if such claims in some sense would not have arisen but for the parties' agreement, the Court is satisfied that [the workers'] causes of action are not disputes 'over the terms of [the] Agreement' that would invoke the arbitration provision . . . ." (*Id.* at p. 872.)

As the court explained in *Ramos v. Superior Court* (2018) 28 Cal.App.5th 1042, "Clauses providing for arbitration of disputes "'arising from'" or "'arising out of'" an agreement have generally been interpreted to apply only to disputes regarding the interpretation and performance of the agreement. . . . On the other hand, arbitration clauses . . . that use the phrase 'arising under *or related to*' (italics added) have been construed more broadly." (*Id.* at p. 1052.) A party's claims will come within the scope of a broad arbitration clause when the allegations of the complaint ""'touch matters" covered by the contract containing the arbitration clause.'" (*Ibid.*) Broad arbitration clauses "encompass tort, statutory, and contractual disputes that ""have their roots in the relationship between the parties which was created by the contract."""" (*Ibid.*)

*Ramos* and *Elijahjuan* would classify the arbitration provisions at issue here as narrow because they do not encompass disputes "relating to" the agreements. Instead, the arbitration

9

provisions are limited to "questions or disagreements" that "arise under" the letter agreements or disputes "concerning the terms" of the Physician Services Agreement. Respondent's complaint alleges only that appellants violated statutory rights arising under FEHA and the Labor Code. These causes of action do not "arise under" or "concern the terms" of respondent's contracts with appellants. Consequently, they fall outside the scope of the arbitration provisions.

*Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651 on which appellants rely, does not require a different result because the arbitration provision at issue there was more broad than the provisions at issue here. The agreement in *Khalatian,* required arbitration of "'any controversy or claim between the parties arising out of or relating to this Agreement or any alleged breach hereof, including any issues . . . that this Agreement or any part hereof is invalid, illegal, or otherwise voidable or void . . . .'" (*Id.* at p. 655.) *Khalatian* held this provision encompassed the plaintiff's wage and hour claims because, "The resolution of plaintiff's claims requires a determination whether the Agreement sets the terms of plaintiff's compensation or whether instead the Agreement is 'invalid, illegal, or otherwise voidable or void' for inaccurately characterizing the parties' relationship in order to deprive plaintiff of his rightful compensation under the Labor Code." (*Id.* at p. 659.) While respondent also alleges that she was misclassified as an independent contractor, the arbitration provisions in her contracts do not include the "relating to" term or explicitly refer to a claim that the contracts are "invalid, illegal or otherwise voidable or void . . . ."

*Performance Team Freight Systems, Inc. v. Aleman* (2015) 241 Cal.App.4th 1233, also relied upon by appellants, involved a contract that required arbitration of, "'Any dispute between the parties with respect to the interpretation or the performance of the terms of this Agreement . . . .'" (*Id.* at p. 1244, italics omitted.)  The court held arbitration was required under this provision because the parties' dispute was "'with respect to the interpretation or the performance of the terms' of the agreements.  The individual respondents contend that they performed the trucking services required by the agreements, but that the performance required by [the employer] (in the form of compensation) was inadequate. Furthermore, an analysis of the individual [truck drivers'] status as employees or independent contractors will require an interpretation of the agreements' terms (among other evidence) to decide if the terms accurately reflect the parties' working relationship.  Thus, the parties' dispute encompasses both the interpretation and performance of the subject agreements' terms." (*Id*. at pp. 1245-1246.)

*Elijahjuan, supra,* 210 Cal.App.4th 15*,* reached the opposite result.  There, the court concluded that a dispute over the misclassification of workers as independent contractors did not "arise out" of an employment contract for purposes of applying an arbitration provision.  (*Id.* at p. 21.)  Although the contract would be relevant to prove or disprove the workers' misclassification claim, it would not be dispositive.  The legal factors that must be weighed to determine a worker's proper classification are "extracontractual" and "involve[] consideration [the workers'] actual work," rather than the application or interpretation of their contract.  (*Id.* at pp. 21-22.)

11

We find the reasoning in *Elijahjuan* more persuasive and, for that reason, decline to follow *Performance Team Freight Systems, Inc.*  In a classification dispute, "[t]he label placed by the parties on their relationship is not dispositive . . . ."  (*S.G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 349.)  The factors that must be considered to determine a worker's proper classification relate to the parties' actual conduct in the workplace rather than the terms of a written contract.  (*Bowman v. Wyatt* (2010) 186 Cal.App.4th 286, 303; see also *Becerra v. McClatchy Co.* (2021) 69 Cal.App.5th 913, 930-931.)  Applying those factors to an individual's working conditions does not require interpretation of a written employment contract.  It requires an evaluation of the individual's actual work.  Thus, a dispute over whether that worker has been misclassified does not "arise under" or "concern[] the terms of" the contract.

We conclude the question whether CMHS misclassified Rayhrer as an independent contractor falls outside the scope of the parties' arbitration agreements.  Each agreement limits arbitration to disputes that "arise under" or "concern[] the terms" of the parties' written agreements.  Because Rayhrer's claims arise under FEHA and the Labor Code, they fall outside the scope of the arbitration provisions.

*Disposition*

The order denying the petition to compel arbitration is affirmed.  Respondent shall recover her costs on appeal.

12

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

We concur:

GILBERT, P. J.

BALTODANO, J.

Ronda J. McKaig, Judge

Superior Court County of Ventura

_____

Sheppard, Mullin, Richter & Hampton and Richard J. Simmons, Tyler J. Johnson, for Defendants and Appellants.

Law Offices of Brian R. Weilbacher and Brian R. Weilbacher, for Plaintiff and Respondent.